*Thornton Mellon, LLC v. Adrianne Dennis Exempt Trust*, No. 104, Sept. Term 2020.
Opinion by Arthur, J.

**TAX SALE FORECLOSURES—REIMBURSEMENT FOR ATTORNEY'S FEES**

Section 14-843 of the Tax-Property Article provides, in relevant part that, if a property is redeemed after a complaint to foreclose the right of redemption has been filed, a plaintiff "may be reimbursed for" certain expenses, including "attorney's fees in the amount of . . . $1,500 if an affidavit of compliance has been filed, which amount shall be deemed reasonable for both the preparation and filing of the action[.]"  The permissive language used in this statute ("may be reimbursed") does not mean that the plaintiff is entitled to reimbursement in every case, regardless of circumstances.  The circuit court, in its discretion, may decide whether it is appropriate for the plaintiff to be reimbursed for attorney's fees and expenses incurred in connection with a complaint to foreclose the right of redemption.  The circuit court may deny reimbursement if the court finds (as it did here) that the plaintiff impeded a defendant's exercise of the right of redemption before the plaintiff filed the complaint.

Circuit Court for Frederick County
Case No. C-10-CV-19-000857

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 104

September Term, 2020

_____

THORNTON MELLON, LLC

v.

ADRIANNE DENNIS EXEMPT TRUST

_____

Kehoe,
Arthur,
Reed,

JJ.

_____

Opinion by Arthur, J.

_____

Filed:  April 28, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This appeal arises from a tax-sale foreclosure proceeding. Six months after a tax sale, the property owner partially completed the redemption process by reimbursing the certificate holder for all attorney's fees and expenses incurred at that time. On the following morning, before the property owner was able to complete the redemption process, the certificate holder filed a complaint to foreclose the property owner's right of redemption. The property owner subsequently paid all property taxes owed to the local government.

At issue here is whether the property owner must reimburse the certificate holder for attorney's fees and other fees incurred after the filing of the complaint. The Circuit Court for Frederick County found that the certificate holder made a series of cumulative "errors," which "impeded" the property owner's exercise of the right to redeem the property. On that basis, the court denied the certificate holder's requests to be reimbursed for attorney's fees incurred after the filing of the complaint.

The certificate holder has appealed. Because we perceive no error or abuse of discretion, we shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A.    The Tax Sale[1]

Adrianne Catherine Dennis is the sole beneficiary of the Adrianne Dennis Exempt

---

[1] Tax sales "serve as a mechanism for local governments to collect unpaid property taxes." *Deinlein v. Johnson*, 201 Md. App. 373, 381 (2011). The "general outline" of a tax sale is as follows:

> "[T]he tax collector for a county sells property on which real estate taxes are in arrears. The purchaser receives a certificate of sale. The purchaser

Trust.  In that capacity, she owns her home, located in Walkersville, Maryland.  As of

early 2019, she had failed to pay property taxes that she owed to Frederick County.

Consequently, those unpaid taxes became a lien on the property.  Md. Code (1986, 2019

Repl. Vol.), § 14-804(a)(1) of the Tax-Property Article ("TP").

On May 13, 2019, the Frederick County tax collector conducted a public auction

under the procedures set forth in the tax-sale statute.  The winning bidder, Thornton

Mellon, LLC, received a certificate of sale.  Thornton Mellon paid to the County the sum

of $3,155.33, representing the full amount of property taxes due at the time of sale,

together with interest and penalties on those taxes.

As the certificate holder, Thornton Mellon had the right to file a complaint to

foreclose all rights of redemption "at any time after 6 months from the date of sale[.]"  TP

§ 14-833(a)(1).  The certificate would become void unless Thornton Mellon filed a

complaint within two years of the date of the certificate.  TP § 14-833(c)(1).

As the property owner, Ms. Dennis had the right to redeem the property at any

time until the entry of a judgment foreclosing the right of redemption.  *See* TP § 14-827;

*see also* TP § 14-833(b).  To redeem the property, she needed to pay to the County the

---

must file a complaint to foreclose the owner's right of redemption during a
period beginning six months after the sale and ending two years after the
sale.  Until a final order of foreclosure, the owner retains the right to
redeem.  The amount to be paid to the collector on redemption is provided
by § 14-828, while the amount to be reimbursed to the purchaser is
governed by § 14-843."

*Id.* (citations omitted) (quoting *Dawson v. Prince George's County*, 324 Md. 481,
485 (1991)).

total lien amount paid by the certificate holder at the time of the tax sale, along with any taxes, interest, and penalties that accrued after the sale. *See* TP § 14-828(a)(1)-(3). In addition, she needed to pay, "in the manner and by the terms required by the collector[,]" other expenses or fees for which the certificate holder might be entitled to be reimbursed. *See* TP § 14-828(a)(4).

Section 14-843 of the Tax-Property Article "governs the repayment of attorney's fees and other expenses paid by the [certificate] holder upon redemption of the property sold at tax sale[.]" *Deinlein v. Johnson*, 201 Md. App. 373, 381 (2011). When a property is redeemed, a plaintiff or certificate holder "may be reimbursed for expenses . . . as provided in this section," but "is not entitled to be reimbursed for any other expenses . . . not included in this section." TP § 14-843(a)(1)-(2). "[R]edemption is a condition precedent to the obligation to pay the statutory attorney's fees." *Heartwood 88, Inc. v. Montgomery Cty.*, 156 Md. App. 333, 366 (2004). Thus, if no redemption occurs, "there is no entitlement to attorney's fees." *Id.*; *accord Deinlein v. Johnson*, 201 Md. App. at 385.

TP § 14-843 authorizes reimbursement for attorney's fees in different amounts depending on when the redemption occurs. A plaintiff or certificate holder "may not be reimbursed for expenses incurred within 4 months after the date of sale." TP § 14-843(b)(1)(i). When a property is redeemed more than four months after the sale, but before a complaint has been filed, the certificate holder may be reimbursed for reasonable attorney's fees "not to exceed $500." TP § 14-843(a)(3)(i)(4). When a property is redeemed after a complaint has been filed, the plaintiff may be reimbursed for attorney's

3

fees in the amounts of either "$1,300 if an affidavit of compliance has not been filed" or "$1,500 if an affidavit of compliance has been filed[.]" TP § 14-843(a)(4)(i).[2] Under the statute, those amounts are "deemed reasonable for both the preparation and filing of the action to foreclose the right of redemption." *Id.*

Additionally, "in exceptional circumstances" after a complaint has been filed, a plaintiff or certificate holder may be reimbursed for "other reasonable attorney's fees incurred and specifically requested by the plaintiff or holder of a certificate of sale and approved by the court, on a case by case basis[.]" TP § 14-843(a)(4)(iii).

**B.    Ms. Dennis's Efforts to Redeem the Property**

As mentioned previously, a certificate holder may not file a complaint to foreclose the right of redemption until at least six months after the date of the sale. TP § 14-833(a). Accordingly, as both parties acknowledge, the earliest date on which Thornton Mellon could file a complaint was November 14, 2019.

On November 12, 2019, two days before the six months would expire, Ms. Dennis called the Frederick County Office of Finance to find out the amount that she would need to pay in order to redeem the property. A County employee informed her that, although the total would increase over time, she most likely would need to pay approximately $6,500 in property taxes, interest, and penalties to the County. The employee told her

---

[2] An affidavit of compliance is "an affidavit . . . attesting to the fact that the affiant has complied with the notice provisions of [TP § 14-833(a-1).]" TP § 14-833(a-1)(8); *see* Md Rule 14-502(c)(4). Before a certificate holder may file a complaint to foreclose the right of redemption, the certificate holder must send two notices to the property owner. TP § 14-833(a-1).

that, before the County would accept those payments, she needed to reimburse the certificate holder for attorney's fees and other expenses. The employee said that, once she obtained a release from the certificate holder, affirming that she had reimbursed the certificate holder for all fees and expenses incurred, she could pay the other redemption amounts to the County.[3]

On the same day that Ms. Dennis called the Office of Finance, she visited Thornton Mellon's website for information about the amount of fees that she would need to pay upon redemption. By email, she received an automatically generated "Invoice" stating that her "Balance . . . Due" to Thornton Mellon was $779.76. That total included $500 of attorney's fees, a title search fee of $250, and postage fees of $29.76 for sending two required notices.

Two days later, on the morning of November 14, 2019, Ms. Dennis returned to

_____

[3] The Frederick County website describes this multi-step process as follows:

> In order to redeem the property from tax sale, the owner must pay to the County the total amount paid at the tax sale on his or her behalf, together with 8% interest, penalties and other County charges, including taxes that accrue after the tax sale date. This payment must be made in cash or certified funds. In addition, if the redemption occurs after four months from the date of the sale, the owner must first reimburse the holder of the certificate for any expenses and attorney's fees incurred. The certificate holder will then provide the owner with a letter of release, which will allow the owner to redeem the property from tax sale. If the owner redeems within the first four months from the tax sale date, the owner is not liable for any bidder expenses and a letter of release is not necessary.

Frederick County Tax Sale, Frequently Asked Questions – Property Owners, https://www.frederickcountymd.gov/DocumentCenter/View/9865/frequently-asked-questions-Property-Owners (last visited Apr. 1, 2021).

5

Thornton Mellon's website to pay $779.76, the amount stated on the invoice. When she attempted to do so, she received a new invoice stating that the "Total Balance Now Due" was $2,000.88. That total included an additional $1,000 of attorney's fees for the preparation and filing of a complaint, $181.12 for a filing fee charged by the court, and a $40.00 fee for service of process. At that time, Thornton Mellon was not entitled to reimbursement for those additional fees, because no complaint had been filed.

Ms. Dennis promptly called Thornton Mellon's attorney, Mr. Geoffrey Polk, at his office in Chicago, Illinois. He agreed to remove the unauthorized fees. At 12:15 p.m.,[4] he sent an email to the Office of Finance, with a copy to Ms. Dennis. He wrote: "This has been updated and fees removed. If paid by the end of today (and the County is paid) this filing won't be submitted tomorrow. If it is not fully redeemed by today, those fees will be added back in tomorrow."

Ms. Dennis then used her debit card to pay $779.76 to Thornton Mellon.[5] She received an email confirming that Thornton Mellon had received her payment.

At 1:12 p.m., Mr. Polk sent an email to Ms. Dennis, with a copy to the Office of Finance. In the email, he acknowledged that Thornton Mellon had "received payment for the fees on account" for the property. The email included a link to a two-page release under Mr. Polk's electronic signature. The release acknowledged that Ms. Dennis had

---

[4] This opinion exclusively uses Eastern Standard Time. Many of the emails in the record use Central Standard Time to display the time when an email was sent.

[5] Thornton Mellon added Ms. Dennis a $21.44 fee because she paid with a debit card instead of by certified check.

reimbursed Thornton Mellon "for all costs and expenses" incurred as of November 14, 2019.  The release stated that it was "further understood and agreed" that Ms. Dennis would pay to the County the remaining amounts needed to redeem the property.

The release that Mr. Polk provided, however, stated that it was "expired" and thus "void."  A paragraph on the first page read: "Expiration date: Not Applicable – EXPIRED.  If expired, please check with Attorney Polk."  On the second page, it stated: "It is further understood and agreed, if redemption . . . does not occur on or before Not Applicable – EXPIRED, additional costs may be incurred, and this acknowledgement shall be void.  After such date, a new acknowledgement must be executed in prior to [sic] redemption."

At 2:25 p.m., a County collections specialist emailed Mr. Polk to inquire about the expiration date.  The collections specialist stated that the "release he sent said it was expired" and asked Mr. Polk whether he had intended for the release to remain valid until the end of the day.  Five minutes later, Mr. Polk replied: "Yes, you can allow redemption today, thanks!"  Neither the collections specialist nor Mr. Polk sent a copy of these emails to Ms. Dennis.  Consequently, Ms. Dennis did not receive clarification about the expiration date of the release.

At 4:09 p.m., a few minutes after the Office of Finance had closed for the day, Ms. Dennis emailed Mr. Polk to complain about the release.  Among other things, she told him that the County "would not except [sic] an 'expired'" release.  She wrote: "I am doing my best to work with your firm, however you are making it extremely difficult when added fees are tacked on before the expiration date, I have to wait for a return call,

7

and then you send me a certificate that reads 'EXPIRED' which clearly it was not[.]" In a follow-up email, sent three minutes later, she asked, "if today is the deadline, then how can it be 'EXPIRED'?" She added: "the deadline date should read today's date."

Mr. Polk replied by email at 4:38 p.m. He did not provide a corrected release or offer to provide one. Instead, he wrote: "The release is expired because today is the deadline." He said that he had already "told" the County collections specialist that Ms. Dennis was "allowed to pay the taxes today," and that she should "please pay" those taxes. He added: "there is no extension after today."

Mr. Polk sent another email to Ms. Dennis at 8:48 a.m. on the following morning, before the Office of Finance reopened. He wrote:

> Fees have been added. I gave you a chance to pay, and you didn't. The county was aware that it wasn't expired (hence why it said check with me) and you were aware.
>
> Please pay the current fees and the County to redeem. There is nothing else I can do.

At the time when Mr. Polk sent that email, Thornton Mellon was not entitled to seek reimbursement for those additional fees, because Mr. Polk did not file the complaint on behalf of Thornton Mellon until 10:06 a.m. that morning. The complaint, when it was eventually filed, asserted that, if Ms. Dennis wished to redeem the property, "the total due for fees and expenses [was] $2000.88."[6]

---

[6] The complaint did not mention that Ms. Dennis had already reimbursed Thornton Mellon, one day earlier, for $779.76 of attorney's fees and expenses. In a "response" to Ms. Dennis's answer, Thornton Mellon did disclose the $779.76 payment. But by then, Thornton Mellon was seeking even more fees, pushing the total back over $2,000.00 again.

8

**D.**     **Proceedings in the Circuit Court**

On December 16, 2019, shortly after being served with a copy of the complaint, Ms. Dennis obtained a cashier's check in the amount of $6,265.63, payable to the Frederick County Treasurer.

One week later, Ms. Dennis filed an answer to the complaint. She asserted that the fees requested by Thornton Mellon were "improperly inflated, contradictory, and otherwise not in compliance" with the Tax-Property Article. She asked the court to deny the request to foreclose her right of redemption and "to fix the amount necessary for redemption" under TP § 14-829. She further requested "a hearing on her Answer and Request for Determination of Redemption Amount."

In response, Thornton Mellon said that it did "not object in principle" to Ms. Dennis's "request to redeem" the property, but it asked the court to set an amount that would include reimbursement for $2,033.76 of attorney's fees and expenses, in addition to the $779.76 of the fees and expenses that she had already paid.

In an amended answer, Ms. Dennis stated that she was "prepared" to pay all amounts needed to redeem the property, except for any fees incurred after she paid Thornton Mellon $779.76 on the afternoon of November 14, 2019. She asked the court to deny all fees added after that date on the premise that they were "inequitable." Once again, she asked the court, under TP § 14-829, to fix the amount necessary to redeem the property.[7]

---

[7] Throughout its appellate brief, Thornton Mellon repeatedly asserts that Ms. Dennis "never" asked the court to fix the redemption amount under TP § 14-829. That

9

Separately, Ms. Dennis moved to dismiss the complaint. Among other things, she asserted that Thornton Mellon's actions had deprived her of a "fair opportunity" to exercise her right of redemption. Thornton Mellon opposed the motion to dismiss and moved to strike all exhibits to that motion.

Both parties made discovery requests in the months that followed the initial pleadings. Ms. Dennis sought information about Mr. Polk's communications with County employees. Thornton Mellon sought information about Ms. Dennis's efforts to pay the redemption amounts and whether she had the financial means to pay those amounts on November 14, 2019.

As the litigation proceeded, Thornton Mellon filed three motions for extraordinary fees. Thornton Mellon requested reimbursement for: $500 of attorney's fees incurred for responding to discovery requests, $1,000 of attorney's fees incurred in responding to the motion to dismiss the complaint, and $1,250 of attorney's fees incurred in connection with its motion to strike exhibits from the motion to dismiss. Ms. Dennis opposed each of those motions, arguing that there were no "exceptional circumstances" to justify the requests for extraordinary fees.

### E. Hearing on All Matters in the Tax-Sale Foreclosure Case

On March 5, 2020, both parties appeared in circuit court to address all pending

---

assertion is incorrect. Ms. Dennis did exactly that in her answer and amended answer. Contrary to Thornton Mellon's assertion, a property owner's answer may include a request to fix the amount necessary to redeem. *See Dawson v. Prince George's County*, 324 Md. 481, 488 (1991).

10

matters in the case.[8]  The court received documentary exhibits from both parties and live testimony from Ms. Dennis.  Most of her testimony concerned her efforts to redeem the property.

Ms. Dennis recalled that, after she received the first notice in September of 2019, she spent some time "considering her options" before deciding that she wanted to redeem the property.  She testified that she raised enough money to redeem the property by selling her grandmother's wedding ring to a "friend of a friend."  Although she could not recall the exact date, she said that the sale was complete on or before November 12, 2019.

Ms. Dennis testified that she received cash in exchange for the ring.  She explained that she did not deposit all of the cash into her checking account because she understood that the County would require her to pay the delinquent property taxes either in cash or with a cashier's check.  As her monthly bank statements confirm, she made a cash deposit of $800 into her checking account.  She said that she planned to use her debit card to pay approximately $800 to Thornton Mellon and to use the remaining cash to pay approximately $6,500 owed to the County.

As mentioned previously, when Ms. Dennis returned to Thornton Mellon's website on the morning of November 14, 2019, she received a new invoice charging unauthorized fees for the filing and service of a complaint.  She called Mr. Polk and

---

[8] At the beginning of the hearing, Thornton Mellon's attorney requested an additional $2,250 of attorney's fees incurred in connection with his preparation for the hearing.  He said that he would "document the additional time with another affidavit if the Court would like."

11

convinced him to correct the amounts on the invoice. By the early afternoon, Ms. Dennis used her debit card to pay Thornton Mellon the amount of $779.76.

Upon making payment, Ms. Dennis received the purported release, which stated that it was "EXPIRED." Ms. Dennis testified that she understood that the County would not accept an expired release. According to Ms. Dennis, she emailed Mr. Polk at 4:09 p.m. and 4:12 p.m. in an "attempt[] to get a release that said not expired." In his reply, sent at 4:38 p.m., Mr. Polk refused to provide a corrected release. At 8:48 a.m. the following morning, she received another email from Mr. Polk, once again demanding additional fees associated with the filing of a complaint.

During direct examination, counsel for Ms. Dennis asked her to explain why she did not try to call the Office of Finance during the afternoon of November 14 or the morning of November 15. The following exchange occurred:

[COUNSEL]: So Ms. Dennis, in summary were you prepared to redeem the property . . . with the attorney's fees paid on that day on November 14th?

[MS. DENNIS]: Of course, that's why I --.

THE COURT: On November 14th?

[COUNSEL]: Right, yes.

[MS. DENNIS]: Yes. The day before.

[COUNSEL]: And hypothetically, if you were given the opportunity in the early morning of November 15th, would you have done so?

[MS. DENNIS]: If he had provided me a release that did not say expired, then of course I would have. I would have done it that same day if he would have provided me a release that had the date on it as I asked him to. But because of the acknowledgement that is attached to it says that if it is

12

expired, it can incur additional costs, I felt that there was – I wasn't going to sign myself up for an undisclosed amount of fees that could be incurred and you know, by his own admission in the e-mails that you submitted to the judge, he said I had until the end of the day on the 14th. So the release should have read the 14th or close of business on the 14th or however he wanted to word it. But when I called the tax office on the 12th, they told me explicitly multiple times every release must have an expiration date. We will not accept it if it doesn't. And also I talked to them for quite a few minutes and they gave me also a Frederick County tax website to refer to which also says in multiple places that it must have an expiration date. And on their own webpage where it says frequently asked questions, it says all releases will have an explicit expiration date. So if it says that in many places, I just thought it's probably not a good idea to go with the expired one.

Ms. Dennis further testified that, after being served with a copy of a complaint, she used the proceeds from the sale of her grandmother's wedding ring to obtain a cashier's check, in the amount of $6,265.63, payable to the Frederick County treasurer.

In summary, Ms. Dennis claimed that she would have completed the redemption process on November 14 or 15, 2019, had Thornton Mellon not caused additional delays by sending an invoice with unauthorized fees and by providing her with an expired release shortly before the Office of Finance closed for the day.

For its part, Thornton Mellon asked the court to conclude that Ms. Dennis was either unwilling or unable to make the redemption payments on those dates. According to Thornton Mellon, therefore, the incorrect invoice and expired release either did not prevent or could not have prevented Ms. Dennis from redeeming the property.

The court took all matters under advisement at the conclusion of the hearing.

On the following day, Ms. Dennis paid the full amount of property taxes, interest, and penalties that she owed to the County. Ms. Dennis filed a line notifying the court

13

that she had "cured the property tax portion of the default with Frederick County, . . . leaving the only amount in dispute [Thornton Mellon]'s attorneys['] fees and costs." Thornton Mellon consented to the property tax payment, but expressly reserved each of its claims for attorney's fees and expenses.

F.       **Judgment of the Circuit Court**

On March 17, 2020, the circuit court issued a memorandum opinion and order resolving all matters in the case.  The court began by noting: "[Ms. Dennis] has redeemed the property at issue by payment of the tax and interest due, as well as attorney's fees paid pre-filing; what remains are [Thornton Mellon's] claims for attorney's fees under its various pleadings."

The court explained that, when Ms. Dennis "first made relevant contact with [Thornton Mellon] to redeem the property[,] . . . she was directed to [Thornton Mellon's] website[,] which erroneously required the payment of post-suit legal fees, even though suit had not been filed."  The court noted that, by 1:15 p.m. on November 14, 2019, Thornton Mellon had "corrected the amount due . . . to reflect pre-suit legal fees, and [Ms. Dennis] paid the revised, corrected sum that day."

Afterwards, the court explained, Thornton Mellon provided Ms. Dennis with a release that "stated on its face" that it was expired.  The court emphasized: "Receipt of such a release is a condition to the Finance Department accepting a redemption payment."  The court noted that Ms. Dennis "first objected to the release" in her email to Mr. Polk at 4:09 p.m.  Mr. Polk "first disclosed" to Ms. Dennis that he had "advised the Finance Department . . . that the release would be good only for that day of November 14

14

. . . by email at [4:38 p.m.], by which time the Finance Department had already closed[.]"

Then, on the "following day at [8:48 a.m.]," Mr. Polk "advis[ed] her to pay current (post-suit fees), and stat[ed] there was nothing else he could do." The court observed that Thornton Mellon did not actually file the complaint until 10:06 a.m.

The court concluded:

> The condition set by [Thornton Mellon]—that the release would expire on November 14—was set in error in that [Ms. Dennis] had the right to redeem without post-suit attorney's fees until the filing of the complaint, but she could not do so without a valid release from [Thornton Mellon]. Further, [Ms. Dennis] had the statutory right to redeem with pre-suit legal fees until the Complaint was filed, which occurred at [10:06 a.m.] on November 14. [Thornton Mellon]'s errors impeded redemption.
>
> *     *     *
>
> [Thornton Mellon] doubts that [Ms. Dennis] would have redeemed the property during November 13-15, but [Thornton Mellon]'s errors deprived [Ms. Dennis] of a meaningful opportunity to do so. [Thornton Mellon's] business practices may be efficient, but the goal of efficiency does not trump [Thornton Mellon's] obligation to make sure that . . . it does not impede the legal opportunities to redeem to which [Ms. Dennis] is entitled; this [Thornton Mellon] failed to do. Given [Thornton Mellon's] errors, the filing of the Complaint was premature, and all requests for attorney's fees flow from it. It would be inequitable for the Court to award attorney's fees against [Ms. Dennis].

"Accordingly," the court "DENIED" Thornton Mellon's three motions for extraordinary attorney's fees and "further" ordered that the complaint be "DISMISSED AS MOOT." The court also denied "any other relief" requested by the parties.

Upon the entry of judgment, Thornton Mellon noted this timely appeal.

15

As both parties recognize, Maryland Rule 8-131(c) governs our review of the trial court's judgment. That rule provides: "When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." *Id.* This Court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* To the extent that a judgment involves a question of law, such as the proper interpretation or application of a statute, this Court makes its own determination of whether the trial court's conclusions were legally correct. *See, e.g.*, *PNC Bank, Nat'l Ass'n v. Braddock Props.*, 215 Md. App. 315, 322 (2013).

## DISCUSSION

In this appeal, Thornton Mellon asks this Court to vacate the order dismissing the complaint to foreclose the right of redemption and remand the matter to the trial court for further proceedings. Thornton Mellon asks this Court to instruct the trial court to "award [Thornton Mellon] its statutory attorney's fees and expenses" and to grant a "new hearing" on its motions for extraordinary attorney's fees.

In its appellate brief, Thornton Mellon presents the following four questions:

1. Whether the trial court erred in dismissing Appellant's Complaint as Moot, where Appellee has not fully redeemed the Subject Property?

2. Whether the trial court erred in finding that Appellant filed its Complaint "prematurely" on November 15, 2019, given that, as a matter of law, Appellant could file at any time after November 13, 2019?

3. Whether the trial court erred in finding that Appellant committed "errors" that impeded Appellee from redeeming the Subject Property,

16

where Appellee conceded that she was aware of her ability to redeem the Subject Property within 12 minutes of paying fees to Appellant?

4. Whether the trial court erred in denying Appellant's motions for extraordinary attorneys' fees, without reviewing them on the merits, solely on the basis that they flowed from Appellant's Complaint?

Much of Thornton Mellon's analysis concerns a few key sentences from the trial court's memorandum opinion. The court, after identifying a series of "errors" that Thornton Mellon made while Ms. Dennis was trying to redeem the property, found that these errors "impeded redemption." The court concluded: "Given [Thornton Mellon]'s errors, the filing of the Complaint was premature, and all requests for attorney's fees flow from it. It would be inequitable for the Court to award attorney's fees against [Ms. Dennis]."

From Thornton Mellon's perspective, the trial court "determined that [Thornton Mellon]'s 'errors' . . . impeded [Ms. Dennis] from redeeming the Subject Property[,] thus making the filing premature." According to Thornton Mellon, the complaint "was dismissed as 'moot' and the Court determined that *because* [Thornton Mellon's] remaining claim for fees flowed from that Complaint, they would be denied." (Emphasis added.) Thornton Mellon asserts that the court "never made a determination as to the redemption amount" and "did not reach the merits of [Thornton Mellon's] requests for attorneys' fees."

Our reading of the opinion is different from that of Thornton Mellon. As we read the opinion, the court did not deny the requests for attorney's fees because it had dismissed the complaint. Rather, the court dismissed the complaint because it was

17

denying all requests for attorney's fees and no other redemption amounts remained in dispute.

The court began from the undisputed premises that Ms. Dennis had already reimbursed Thornton Mellon for all fees and expenses incurred before the filing of the complaint and had already paid all property taxes and related charges that she owed to Frederick County. In the court's words, "what remain[ed]" were Thornton Mellon's "claims for attorney's fees under its various pleadings." The court, for the reasons stated in its opinion, went on to decide that Thornton Mellon should not be reimbursed for any additional fees incurred because of the filing of the complaint. As a result of that decision, the redemption was complete. Ms. Dennis had already paid all amounts needed to redeem the property. It would have been unnecessary for the court to fix the remaining redemption amount at $0. Thornton Mellon no longer had any basis on which to seek to foreclose a right to redeem after that right had already been exercised.

As we see it, the appropriate question for our review is: Did the trial court err or abuse its discretion when it denied each of Thornton Mellon's requests to be reimbursed for attorney's fees and other expenses? If the court properly denied those reimbursement requests, then the judgment should stand. If the court improperly denied those requests, then the complaint must be reinstated.

Just as we disagree with Thornton Mellon's interpretation of the basis for the dismissal, we disagree with Thornton Mellon's interpretation of the court's remark that

the complaint was "premature."[9]  Thornton Mellon observes that, as long as the certificate holder sends the required notices at the earliest time permitted by the statute, the certificate holder may file a complaint to foreclose the right of redemption "at any time after 6 months from the date of sale[.]"  TP § 14-833(a).  Thornton Mellon filed its complaint on November 15, 2019, two days after that six-month period ended.  Thornton Mellon argues that "[t]he trial court's determination that the Complaint was filed prematurely, when it was filed two days after six months had passed since the sale, was incorrect as a matter of law."

We do not interpret the court's comment that the complaint was "premature" to mean that it was filed before the statute allowed it to be filed.  The court observed, and Ms. Dennis had conceded, that Thornton Mellon was permitted to file a complaint on November 14, 2019.  Yet the question of whether Thornton Mellon was permitted to file a complaint is distinct from the question of whether Thornton Mellon should or must be reimbursed for attorney's fees and expenses incurred in connection with that complaint. The court focused on the second question.  The court's characterization of the complaint as "premature" should be understood in that context.

Section 14-843 of the Tax-Property Article is the basis for Thornton Mellon's claims for reimbursement.  That section provides, in relevant part, that "if an action to foreclose the right of redemption has not been filed, and the property is redeemed more than 4 months after the date of the tax sale, the holder of a certificate of sale may be

---

[9] The full sentence was: "Given [Thornton Mellon]'s errors, the filing of the Complaint was premature, and all requests for attorney's fees flow from it."

reimbursed for" certain "expenses actually incurred[,]" including "reasonable attorney's fees, not to exceed $500." TP § 14-843(a)(3)(i)(4). It further provides: "If an action to foreclose the right of redemption has been filed, the plaintiff or holder of a certificate of sale may be reimbursed for" certain expenses, including "attorney's fees in the amount of . . . $1,500 if an affidavit of compliance has been filed, which amount shall be deemed reasonable for both the preparation and filing of the action to foreclose the right of redemption[.]" TP § 14-843(a)(4)(i)(2).

As Ms. Dennis points out, this provision states that, after filing a complaint and affidavit of compliance, the plaintiff or certificate holder "'may be reimbursed for' $1,500 in attorney's fees actually incurred." Ms. Dennis argues that, by employing this permissive language, the General Assembly entrusted the circuit court with discretion to grant or deny reimbursement of fees incurred for the preparation and filing of a complaint. She contends that the statute does not create an automatic entitlement to reimbursement for fees in every case.

When used in a statute, "[t]he word 'may' is generally understood as permissive, as opposed to mandatory, language." *Brodsky v. Brodsky*, 319 Md. 92, 98 (1990). Ordinarily, therefore, if a statute "provide[s] that the court 'may' award reasonable counsel fees[,] [t]here is no statutory requirement that [the court] do so." *Friolo v. Frankel*, 373 Md. 501, 515 (2003). By using such language, fee-shifting statutes "permit a trial court, *in its discretion*, to award attorneys' fees, and such discretion, consistent with the intent of the General Assembly, is 'to be exercised liberally in favor of awarding fees, at least in appropriate cases.'" *Friolo v. Frankel*, 403 Md. 443, 456-57 (2008)

20

(emphasis in original) (quoting *Friolo v. Frankel*, 373 Md. at 515).

Ms. Dennis informs us that the language of TP § 14-843 resulted from a 2008 enactment which reformed various aspects of the tax-sale foreclosure process. In 2008 the General Assembly enacted "An Act concerning Tax Sales—Minimum Amount Due—Redemption Payments—Reimbursement of Expenses on Redemption." The express purposes of the Act included: "providing that the holder of a certificate of sale may be reimbursed for certain expenses under certain circumstances" and "altering the type and amount of expenses for which a plaintiff or holder of a certificate of sale may be reimbursed[.]" 2008 Md. Laws ch. 334, preamble.

A prior version of the statute had provided: "[O]n redemption, the plaintiff or the holder of a certificate of sale is entitled to be reimbursed for expenses incurred in any action or in preparation for any action to foreclose the right of redemption." Md. Code (1986, 2007 Repl. Vol.), § 14-843(a) of the Tax-Property Article. It further provided: "In addition, the plaintiff or holder of a certificate of sale, on redemption, is entitled to be reimbursed . . . for reasonable attorney's fees, provided that the fees may not exceed $400 unless an action to foreclose the right of redemption has been filed[.]" *Id.*

The 2008 Act struck the phrase "is entitled to be reimbursed" and replaced it with the phrase "may be reimbursed." 2008 Md. Laws ch. 334, § 1. The Act added the new language authorizing reimbursement for $1,500 of attorney's fees after a complaint is filed (or $1,300 if the complaint is filed without an affidavit of compliance). *Id.* As summarized by the Department of Legislative Services, these provisions "plac[e] caps on the amount of attorney's fees that a certificate holder can charge a property owner on

21

redemption, with the amount varying slightly depending on whether an affidavit of compliance has been filed." Fiscal and Policy Note (Revised) to House Bill 1211, 2008 Session; Fiscal and Policy Note (Revised) to Senate Bill 854, 2008 Session. The Act also added the language permitting a plaintiff or certificate holder to request court approval for other attorney's fees upon a showing of exceptional circumstances. 2008 Md. Laws ch. 334, § 1.

Along with these changes, the General Assembly altered the manner in which the provisions governing tax-sale foreclosures, sections 14-832.1 through 14-854 of the Tax-Property Article, should be construed. Before 2008, the tax-sale statute stated that these provisions "shall be liberally construed as remedial legislation to encourage the foreclosure of rights of redemption by suits in the circuit courts and for the decreeing of marketable titles to property sold by the collector." Md. Code (1986, 2007 Repl. Vol.), § 14-832 of the Tax-Property Article. Now, as a result of the 2008 amendments, these provisions "shall be construed to ensure a balance between: (1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale; and (2) the public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right of redemption." TP § 14-832.

Thornton Mellon insists that Ms. Dennis "is wrong regarding the discretion afforded to trial courts when determining whether attorney's fees are reasonable." Thornton Mellon contends that the statute leaves the court with no choice but to grant reimbursement, at least where a complaint is filed within the prescribed time period. Thornton Mellon emphasizes that under the statute the amount of $1,500 of attorney's

22

fees "*shall be deemed reasonable* for both the preparation and filing of the action to foreclose the right of redemption." TP § 14-843(a)(4)(i)(2) (emphasis added). Thornton Mellon says that there is "nothing ambiguous" about this language.

As we read the statute, the language cited by Thornton Mellon relates to the amount of reimbursement that the court must award if it determines that reimbursement is appropriate. The mandatory language ("shall be deemed reasonable") does not overcome or negate the permissive language from the earlier clause ("may be reimbursed"). To say that the amount of $1,500 of attorney's fees "shall be deemed reasonable" is not the same thing as saying that the court shall permit reimbursement in every case, regardless of the circumstances. The trial court may have believed that the fees that Mr. Polk charged to Thornton Mellon were reasonable. The trial court, however, seems to have concluded that, notwithstanding the reasonableness of the amount of fees, this complaint never should have been filed at all, or that it should not have been filed until Thornton Mellon had removed the impediments that it placed in the way of Ms. Dennis's right of redemption.

We conclude that TP § 14-843 affords the circuit court at least some discretion to decide whether the plaintiff or certificate holder should be reimbursed for attorney's fees and other expenses incurred in connection with a complaint to foreclose the right of redemption. This interpretation is consistent with the statutory language as a whole and with the policy of "ensur[ing] a balance between: (1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale; and (2) the public policy of providing marketable title to property that is sold at a tax sale through the

23

foreclosure of the right of redemption." TP § 14-832. The trial court here identified a sound justification to deny reimbursement: it concluded that allowing reimbursement would unduly elevate "the goal of efficiency" in the tax-sale purchasing business at the expense of "the legal opportunities to redeem to which [a property owner] is entitled."[10]

In addition to arguing that reimbursement was not a discretionary decision, Thornton Mellon challenges the underlying findings on which the court based its decision. Thornton Mellon contends that the "trial court's finding that [Thornton Mellon] made 'errors' that precluded [Ms. Dennis] from paying her tax obligation was clearly erroneous[.]"

According to Thornton Mellon, the finding that it impeded redemption "is without any legal footing" because no "such thing as 'impeded redemption' exist[s]." To the contrary, the redemption process is set up in such a way that makes it possible for a certificate holder (whether intentionally or unintentionally) to frustrate the redemption process once it is initiated. Redeeming a property requires several payments, one of which is payment "in the manner and by the terms required by the collector," for "any expenses or fees for which the plaintiff or the holder of a certificate of sale is entitled to

---

[10] Ms. Dennis contends that a review of other potential indicia of legislative intent confirms her conclusion that the General Assembly intended to vest the trial courts with discretion to grant or deny reimbursement. In an appendix to her brief, Ms. Dennis reproduced an array of documents created by legislators and public interest advocacy groups. In brief summary, proponents of the 2008 amendments asserted that replacing the phrase "is entitled to" with the word "may" would empower courts to limit perceived abuses of the tax-sale foreclosure process. Because we conclude that the General Assembly expressed its intent and purpose clearly enough, we find it unnecessary to consider these extrinsic sources.

reimbursement under [TP § 14-843.]" TP § 14-828(a)(4). In Frederick County, the tax collector requires property owners to pay those amounts directly to the certificate holder in exchange for "a letter of release, which will allow the owner to redeem the property[.]"[11] Under this system, a property owner cannot exercise the statutory right of redemption without some reasonable level of cooperation from the certificate holder.[12]

The trial court's findings of "errors" by Thornton Mellon concerned the efforts that Thornton Mellon made in response to Ms. Dennis's attempt to exercise her right of redemption. Thornton Mellon does not appear to dispute the finding that, on the morning of November 14, 2019, its website "erroneously required the payment of post-suit legal fees, even though suit had not been filed." The court explained that, at Ms. Dennis's

---

[11] Frederick County Tax Sale, Frequently Asked Questions – Property Owners, https://www.frederickcountymd.gov/DocumentCenter/View/9865/frequently-asked-questions-Property-Owners (last visited Apr. 1, 2021).

[12] Both parties have cited *Scheve v. McPherson*, 44 Md. App. 398 (1979), in support of their respective positions. Under the facts presented there, this Court held that a certificate holder did not breach any legal or equitable duty owed to defendants attempting to redeem a property. *Id.* at 404-08. There, after a complaint had been filed, the certificate holder advised the defendants that, if they paid certain costs and expenses, he would join them in a petition to redeem the property. *Id.* at 400. "[N]o particular deadline was specified" for the defendants to respond. *Id.* at 407. The Court reasoned that, had the certificate holder "rushed in to court the next day, as he otherwise had a right to do, an element of unfairness and inequity certainly would have been present." *Id.* "But [the certificate holder] waited nearly three weeks before seeking a decree" foreclosing the right of redemption. *Id.* The Court said that, "[a]t best," the certificate holder's "obligation was to wait but a reasonable time." *Id.* at 408. "Three weeks was long enough in the absence of any intervening communication from or on behalf of [the defendants]." *Id.* Because of the factual differences between this case and *Scheve*, we find *Scheve* to be largely inapposite. *Scheve v. McPherson* is helpful here mainly insofar as it illustrates the basic principle that a certificate holder is obligated not to act in a way that unreasonably frustrates the right of redemption.

prompting, Thornton Mellon corrected the amount "to reflect pre-suit legal fees," and Ms. Dennis "paid the revised, corrected sum[.]" At that point, she had a statutory right to complete the redemption process by paying the remaining amounts to the County, "but she could not do so without a valid release from [Thornton Mellon]." As the court explained, Thornton Mellon gave her a purported release that "stated on its face" that it was "expired." Although Mr. Polk later told a collections specialist that the release would remain valid until the end of the day, he did not communicate that information to Ms. Dennis until after the Office of Finance had closed for the day.

On appeal, Thornton Mellon asserts that "[n]othing [it] did prevented [Ms. Dennis] from redeeming" the property. Thornton Mellon appears to suggest that Ms. Dennis had a sufficient opportunity to pay the amounts that she owed to the County after Thornton Mellon sent the "EXPIRED" release (around 1:15 p.m.) and before the Office of Finance closed, at 4:00 p.m. Thornton Mellon considers it inconsequential that the release stated that it was "EXPIRED," because, according to Thornton Mellon, Ms. Dennis was "well aware that she could redeem" the property before the Office of Finance closed that day.

The trial court saw things differently, and we see nothing unreasonable in the court's assessment of the situation. At best, Thornton Mellon had supplied contradictory and confusing information. Earlier that day, Ms. Dennis received a copy of an email suggesting that Thornton Mellon would not object to her paying the County before the

end of the day.[13]  But in the afternoon, she received the executed release itself, which stated that the required release was "expired" and "void."

As Ms. Dennis explained in her testimony, she had previously learned from County employees and the County's website that a release would be unacceptable without a valid expiration date.  Even the County collections specialist apparently thought that the expiration date of the release needed clarification, which Mr. Polk quickly provided (but not to Ms. Dennis).  As the trial court observed, Ms. Dennis lacked any such clarification when she sent two emails (at 4:09 p.m. and 4:12 p.m.) objecting to the release.  Under the circumstances, it was perfectly understandable for Ms. Dennis to conclude that the County would not accept her redemption payment until she obtained a corrected release.  She did nothing unreasonable by objecting to the "EXPIRED" release that Thornton Mellon provided.

Thornton Mellon nonetheless argues that Ms. Dennis's "testimony that she intended to redeem lacks credibility."  Thornton Mellon insists that Ms. Dennis was "fully aware that there was no issue with the release" and accuses her of "feign[ing] confusion regarding the 'expired' language in the release."  Thornton Mellon argues that her "story" that she "did not even bother" trying to use the expired release "to redeem at the Frederick County Finance Office" before the Office closed for the day "utterly lacks credibility."  Thornton Mellon contends, therefore, that the "finding that [Ms. Dennis]

---

[13] Even on that point, the text of the email is less than entirely clear.  It reads: "This has been updated and fees removed.  If paid by the end of today (and the County is paid) the filing won't be submitted tomorrow.  If it is not fully redeemed by today, those fees will be added back in tomorrow."

27

was impeded from redeeming is not supported by substantial evidence and is clearly erroneous."

It is not our role to reassess the credibility of the witnesses who testify before the trial court. *See* Md. Rule 8-131(c). Appellate courts are bound by a trial court's findings of fact unless there is no competent and material evidence in the record to support to them. *Mayor & City Council of Baltimore v. Thornton Mellon, LLC*, 249 Md. App. 231, 238 (2021). The trial court was fully entitled to credit Ms. Dennis's testimony that she would have redeemed the property if Thornton Mellon had met its obligation to give her an acceptable release.

Thornton Mellon recognizes that, in addition to considering the failure to provide a valid release, the court "gave great weight to what transpired on November 15, 2019," when Mr. Polk emailed Ms. Dennis at 8:48 a.m. Thornton Mellon tells us that this email merely "inform[ed]" Ms. Dennis that Thornton Mellon "was exercising its right under the law to file a Complaint." This description belies the actual content of the email: Mr. Polk told her that "[f]ees ha[d] been added" and insisted that she pay what he called "the current fees" in order to redeem.

These statements were misleading. As the circuit court noted, Mr. Polk sent this email demanding that Ms. Dennis pay "post-suit" fees, but he did not actually file a complaint until 10:06 a.m. that morning. At the time of his email, the Office of Finance had not yet opened for the day. Ms. Dennis still had the right to pay the redemption amounts that she owed to Frederick County. She had no obligation to reimburse Thornton Mellon for anything in addition to the $779.76 that she had paid on the previous

28

afternoon. This demand for unauthorized fees (the second in 24 hours), coupled with the refusal to provide a corrected release, would tend to dissuade a property owner from trying to exercise the right of redemption when the Office of Finance opened on the morning of November 15, 2019.

In addition to arguing that its own actions did not impede redemption, Thornton Mellon argues that its actions could not have done so. Thornton Mellon observes: "One cannot be impeded from doing something that [one] could not do in the first place." In Thornton Mellon's interpretation of the facts, Ms. Dennis "did not have the funds to redeem" the property on November 14, 2019.

Thornton Mellon asserts that the "only evidence" of Ms. Dennis's "ability to redeem was a cashier's check for $6,256.04 dated December 16, 2019." This assertion is incorrect. The trial court received sufficient evidence of Ms. Dennis's ability to pay in the form of her sworn testimony that she was able to pay. She testified, subject to cross-examination, that she had obtained enough cash needed to pay all redemption amounts as of November 12, 2019. According to her testimony, she had raised those funds by selling her grandmother's wedding ring to an acquaintance. She explained that she did not deposit the cash all at once because she planned to use most of the cash to pay the amounts that she owed to Frederick County, which would not accept payment by debit card or by personal check.

Thornton Mellon faults Ms. Dennis for failing to produce "documentation" to verify her testimony, such as a "bill of sale" for the sale of the ring. The trial court was not required to discredit her testimony simply because it lacked additional corroboration.

29

In any event, the documents in evidence were fully consistent with her testimony. Ms. Dennis certainly possessed at least $800 on November 14, 2019, which she deposited in her checking account and then paid to Thornton Mellon with her debit card. She certainly possessed at least $6,265.63 on December 16, 2019, which she used to obtain a cashier's check payable to the Frederick County Treasurer. It is possible, as Thornton Mellon suggests, that she acquired the additional $6,265.63 sometime between those two dates. It is not irrational, however, to credit her testimony that she obtained those funds from the same source and at the same time.

Thornton Mellon also criticizes the trial court for "fail[ing] to make a finding that [Ms. Dennis] even had the ability to make the payment in the first place." According to Thornton Mellon, the trial court "made no finding" regarding whether Ms. Dennis had the ability to pay those redemption amounts "and instead held that [Thornton Mellon] had deprived [Ms. Dennis] 'of a meaningful opportunity to do so.'" Thornton Mellon asserts that the trial court was "erroneous" in its "apparent determination that [Ms. Dennis's] ability to pay was irrelevant."

Reading the opinion as a whole, we reject Thornton Mellon's interpretation. The trial court explained that Ms. Dennis "first made relevant contact with [Thornton Mellon] *to redeem the property* on November 12, 2019." (Emphasis added.) The court said that, on the afternoon of November 14, 2019, Thornton Mellon had "corrected" its invoice to "to reflect pre-suit legal fees, and [Ms. Dennis] paid the revised, corrected sum that day." The court said that, at 4:09 p.m., Ms. Dennis "first objected to the release" and "complained to [Thornton Mellon] that the release stated that it was expired." The court

30

said that Ms. Dennis "had the right to redeem without post-suit attorney's fees until the filing of the Complaint, but she could not do so without a valid release from [Thornton Mellon]." Ultimately, the court found that "[Thornton Mellon's] errors *impeded redemption*." (Emphasis added.)

Everything that the court wrote about Ms. Dennis's actions conveys a conclusion that she would have redeemed the property if not for the impediments created by Thornton Mellon. By implication, the court was rejecting Thornton Mellon's alternative theories that Ms. Dennis did not redeem either because she did not intend to redeem or because she did not yet have enough money. "'[T]rial judges are not obliged to spell out in words every thought and step of logic.'" *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 426 (2007) (quoting *Beales v. State*, 329 Md. 263, 273 (1993)). It would be a waste of time and resources to remand this case to the trial court for the sole purpose of requiring the judge to expressly state what was already fairly implied.

In sum, we perceive no error or abuse of discretion in the trial court's decision to deny reimbursement for fees incurred in connection with the preparation and filing of the complaint. The court's finding that Thornton Mellon's actions "impeded" Ms. Dennis's redemption of the property is not clearly erroneous. The court did not abuse its discretion in deciding that "[i]t would be inequitable . . . to award attorney's fees against [Ms. Dennis]" under the circumstances.

This finding of "inequit[y]" further justifies the court's decision to deny Thornton Mellon's three motions for extraordinary fees under TP § 14-843(a)(4)(iii). That provision states, in pertinent part: "If an action to foreclose the right of redemption has

31

been filed, the plaintiff or holder of a certificate of sale may be reimbursed for[,] . . . in exceptional circumstances, other reasonable attorney's fees incurred and specifically requested by the plaintiff or holder of a certificate of sale and approved by the court, on a case by case basis[.]" *Id.* As the statutory language makes clear, a "decision whether to award extraordinary attorney's fees under the circumstances . . . falls squarely with the [trial] court's discretion." *Deinlein v. Johnson*, 201 Md. App. 373, 388 (2011).

Thornton Mellon argues that the court never exercised that discretion because the "sole" bases for the court's denial of the motions for extraordinary fees were the determinations "that the [c]omplaint was filed prematurely" and "that it would be 'inequitable' to permit the recovery of any attorneys' fees that flowed from that [c]omplaint." Once again, however, we do not agree with Thornton Mellon's reading of the memorandum opinion. The court, in the exercise of its discretion, concluded that it would be "inequitable" to permit reimbursement for additional attorney's fees. The court directed this analysis toward "all requests for attorney's fees," not simply the fees associated with the preparation and filing of the complaint.

Thornton Mellon appears to believe that any unfairness here lies in the denial of the requests for fees. Thornton Mellon says that "as a courtesy" it "gave" Ms. Dennis only until the end of the day on November 14 to redeem the property. Thornton Mellon argues that it "should not be penalized for extending a courtesy" that, in Thornton Mellon's view, it had no obligation to extend.

What Thornton Mellon overlooks is that the series of impediments that the court identified did not concern matters of "courtesy." As a certificate holder, Thornton

32

Mellon had an obligation not to demand reimbursement for fees that were not authorized by statute. When Ms. Dennis initiated the redemption by reimbursing Thornton Mellon for all attorney's fees for which reimbursement was authorized, Thornton Mellon became obligated to provide an acceptable release. It may or may not have been acceptable for Thornton Mellon to provide a release that stated that it would expire in less than three hours. Here, however, Thornton Mellon provided a document stating that it had already expired and then refused to correct that document. Under the circumstances, the circuit court reasonably concluded that Thornton Mellon had "failed" to meet its "obligation to make sure that . . . it does not impede the legal opportunities to redeem to which [Ms. Dennis] [was] entitled[.]"

Overall, we see no error or abuse of discretion in the decision to deny Thornton Mellon's claims for attorney's fees and expenses. Accordingly, the property is fully redeemed. The judgment dismissing the complaint to foreclose the right of redemption is affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**