Thornton Mellon LLC v. Adrianne Dennis Exempt Trust, No. 28, September Term, 2021

**TAX SALE FORECLOSURE – RIGHT OF REDEMPTION – FEES AND EXPENSES – ATTORNEY'S FEES – ATTORNEY'S FEES IN EXCEPTIONAL CIRCUMSTANCES – MD. CODE ANN., TAX-PROP. (1986, 2019 REPL. VOL.) § 14-843 –** Court of Appeals held that determination of whether to order reimbursement of attorney's fees under Md. Code Ann., Tax-Prop. (1986, 2019 Repl. Vol.) ("TP") § 14-843(a)(4)(i), after complaint to foreclose right of redemption has been filed, is discretionary, and that, in making determination as to reimbursement, circuit court may consider whether tax sale certificate holder impeded or hindered property owner's exercise of right of redemption.

Court of Appeals held that plain language of TP § 14-843(a)(4) is unambiguous in showing that trial courts are vested with discretion as to whether to order reimbursement of attorney's fees in tax sale foreclosure cases. In addition, legislative history of statutes governing tax sales confirms unambiguous meaning of TP § 14-843(a)(4) and demonstrates General Assembly's intent to encourage redemption. It would be at odds with plain language of statute and intent of General Assembly to find abuse of discretion in trial court's decision not to order reimbursement of attorney's fees where, as in this case, tax sale certificate holder failed to cooperate and, indeed, impeded or hindered property owner's efforts to redeem property.

Court of Appeals concluded that, in instant case, circuit court did not abuse its discretion in declining to award tax sale certificate holder attorney's fees under TP § 14-843(a)(4)(i) where tax sale certificate holder's conduct included billing property owner for attorney's fees and fee for filing of complaint before complaint was filed, providing property owner with release erroneously stating that it was expired, and not promptly advising property owner of explanation for error and that release was valid. Nor did circuit court abuse its discretion in declining to award attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii).

Circuit Court for Frederick County
Case No. C-10-CV-19-000857
Argued: March 3, 2022

IN THE COURT OF APPEALS

OF MARYLAND

No. 28

September Term, 2021

_____

THORNTON MELLON LLC

v.

ADRIANNE DENNIS EXEMPT TRUST

_____

*Getty, C.J.
Watts
Hotten
Booth
Biran
Battaglia, Lynne A. (Senior
Judge, Specially Assigned)
McDonald, Robert N. (Senior
Judge, Specially Assigned)

JJ.

_____

Opinion by Watts, J.

_____

Filed: April 25, 2022

*Getty, C.J, now a Senior Judge, participated in
the hearing and conference of this case while an
active member of this Court. After being
recalled pursuant to Md. Const., Art. IV, § 3A,
he also participated in the decision and adoption
of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case involves a dispute over attorney's fees arising from an action to foreclose the right of redemption of property sold at a tax sale. The tax sale certificate holder purchased property at a tax sale, and the tax sale certificate advised that after six months an action could be brought to foreclose all rights of redemption as to the property. Six months after the tax sale, the tax sale certificate holder billed the property owner for attorney's fees and expenses for a complaint that had not yet been filed, supplied a release that stated that it was expired, and did not promptly notify the owner that the release could nonetheless be used to redeem the property. The property owner reimbursed the tax sale certificate holder for all attorney's fees and expenses actually owed at the time. Before the property owner was able to finish the redemption process, the tax sale certificate holder filed a complaint to foreclose the property owner's right of redemption and sought additional attorney's fees and expenses. The property owner later paid the county all amounts necessary to redeem the property.

Although numerous issues are raised in the petition for writ of *certiorari*, the overarching issue that we must determine is whether a property owner is required to reimburse a tax sale certificate holder for attorney's fees incurred after a complaint has been filed, *i.e.*, whether reimbursement under Md. Code Ann., Tax-Prop. (1986, 2019 Repl. Vol.) ("TP") § 14-843(a)(4)(i) is a mandatory or discretionary determination of the circuit court. If such a determination is discretionary, we must next address whether the circuit court may consider circumstances such as whether the tax sale certificate holder impeded the property owner's exercise of the right of redemption in denying reimbursement under TP § 14-843(a)(4)(i). In addition, we must determine whether the circuit court abused its

discretion in denying the tax sale certificate holder's request for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii).

At the outset, to provide some background, we briefly discuss the statutes governing tax sales. Generally, after a property owner has fallen behind on paying property taxes, the local tax collector must sell the property. See TP § 14-808(a)(1). The local tax collector sells the property to the highest good-faith bidder at a public auction, known as a tax sale. See TP § 14-817(a)(2), (a)(4). The local tax collector provides the tax sale buyer with a tax sale certificate. See TP § 14-820(a). The tax sale certificate holder may file in a circuit court a complaint to foreclose the right of redemption after notices have been provided to the property owner and a specified number of months have passed since the tax sale (which varies by jurisdiction), but before two years have passed since the tax sale. See TP §§ 14-833(a), (a-1), (c)(1), 14-835(a).

Regardless of whether a tax sale certificate holder has filed a complaint, a property owner may redeem property at any time until a circuit court has finally foreclosed the right of redemption. See TP §§ 14-827, 14-833(b). To "redeem" means to "recover[] property taken for nonpayment of taxes, accomplished by paying the delinquent taxes and any interest, costs, and penalties." *Tax Redemption*, Black's Law Dictionary (11th ed. 2019). In Frederick County, the jurisdiction at issue, the required procedure is that the property owner pays fees and expenses due under TP § 14-843 to the tax sale certificate holder, and

the certificate holder issues a release that the property owner uses to redeem the property.[1]

Redemption is a condition precedent to the reimbursement of fees and expenses. See TP § 14-843(a)(1). In other words, if the property owner does not redeem the property, no fees or expenses are owed. See id. The attorney's fees and expenses for which the tax sale certificate holder may be reimbursed upon redemption under TP § 14-843 depend on which jurisdiction the property is in, how much time has passed since the tax sale, and whether the tax sale certificate holder has filed a complaint to foreclose the right of redemption. See TP § 14-843(a)(3), (a)(4), (a)(5), (b)(1).

Where a specified number of months have passed since the tax sale (which varies by jurisdiction and is four months in Frederick County) and a complaint to foreclose the right of redemption has not been filed, the tax sale certificate holder "may be reimbursed for[,]" among other fees, up to $500.00 in attorney's fees. TP § 14-843(a)(3)(i)4, (a)(3)(ii)4. By contrast, where a complaint has been filed, the tax sale certificate holder "may be reimbursed for[,]" among other fees, $1,300.00 or $1,500.00 in attorney's fees, depending on whether an affidavit of compliance has been filed. TP § 14-843(a)(4)(i). In

---

[1]The record indicates that in Frederick County, at the relevant time, the required procedure for redemption was set forth on the County's website and included that the tax sale certificate holder would provide the property owner with a release indicating that the applicable fees and expenses had been paid. This procedure does not appear to be codified in any section of the Code of Maryland or the Frederick County Code. Under an earlier version of TP § 14-828(a)(1)(iv), Md. Code Ann., Tax-Prop. (1986, 2007 Repl. Vol.) ("TP (2007)") § 14-828(a)(4), however, to redeem a property, a property owner was required to either pay the local tax collector the fees and expenses due under the statute or provide the local tax collector with "a release or acknowledgment executed by the" tax sale certificate holder stating that the fees and expenses had been paid. 2008 Md. Laws 2808 (Vol. IV, Ch. 333, S.B. 854); 2008 Md. Laws 2821 (Vol. IV, Ch. 334, H.B. 1211).

addition, where the tax sale certificate holder has filed a complaint to foreclose the right of redemption, the holder "may be reimbursed for[,] . . . in exceptional circumstances, other reasonable attorney's fees incurred and specifically requested by the plaintiff or holder of a certificate of sale and approved by the court, on a case by case basis[.]"  TP § 14-843(a)(4)(iii).

In this case, we hold that a determination of whether to order reimbursement of attorney's fees under TP § 14-843(a)(4)(i), after a complaint has been filed, is discretionary, and that, in making a determination as to reimbursement, a circuit court may consider whether the tax sale certificate holder impeded the property owner's exercise of the right of redemption.  We conclude that, in the instant case, the circuit court did not abuse its discretion in declining to order reimbursement of the tax sale certificate holder attorney's fees under TP § 14-843(a)(4)(i).  Nor did the circuit court abuse its discretion in declining reimbursement of attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii).

The plain language of TP § 14-843(a)(4) is unambiguous in showing that trial courts are vested with discretion as to whether to order reimbursement of attorney's fees in tax sale foreclosure cases.  In addition, the legislative history of the statutes governing tax sales confirms the unambiguous meaning of TP § 14-843(a)(4) and demonstrates the General Assembly's intent to encourage redemption.  It would be at odds with the plain language of the statute and the intent of the General Assembly to find an abuse of discretion in a trial court's decision not to order reimbursement of fees where, as in this case, the tax sale certificate holder failed to cooperate and, indeed, impeded or hindered the property owner's

efforts to redeem the property.

## BACKGROUND

### Tax Sale Certificate, Emails, and Related Documents

The Adrianne Dennis Exempt Trust ("the Trust"), Respondent, owns a house in Frederick County ("the Property"), and Adrianne Dennis is the only occupant of the Property and the only trustee and beneficiary of the Trust.[2] Dennis fell behind on paying taxes on the Property. On May 13, 2019, the Director of the Treasury of Frederick County conducted a tax sale and sold a tax sale certificate associated with the Property to Thornton Mellon, LLC ("Thornton Mellon"), Petitioner.

Under TP § 14-833(a)(1), with specified exceptions not relevant here, a tax sale certificate holder may file a complaint to foreclose the right of redemption six months after the tax sale. In this case, the Director of the Treasury of Frederick County issued a Certificate of Sale ("the Tax Sale Certificate"), stating that the Property had been sold to Thornton Mellon at public auction in a tax sale and that an action could be brought to foreclose the right of redemption after November 13, 2019. Accordingly, November 14, 2019 was the earliest date on which a complaint to foreclose the right of redemption could have been timely filed under TP § 14-833(a)(1).

On November 12, 2019, Dennis contacted Frederick County and learned the amount

---

[2]At a hearing on Thornton Mellon's various requests for attorney's fees, Dennis testified that the Trust was created by her grandparents so that the Property could be passed to her. Although Dennis testified and has stated in pleadings that she owns the Property, other parts of the record indicate that the Trust owns the Property, and Dennis has never been a named party to the case.

- 5 -

that she was required to pay in taxes and other fees to redeem the Property. The same day, Dennis visited Thornton Mellon's website and learned that the amount of attorney's fees and other fees due was $779.76, which included $500.00 in attorney's fees, a $250.00 title search fee, and a $29.76 postage fee.

On November 14, 2019, Dennis visited Thornton Mellon's website again and learned that there was a new balance due of $2,000.88, which included $1,500.00 in attorney's fees for the preparation and filing of a complaint, $181.12 for a filing fee charged by the court, and a $40.00 fee for service of process. At that time, Thornton Mellon had not filed a complaint to foreclose the right of redemption. In other words, although Thornton Mellon had not filed a complaint to foreclose the right of redemption, on November 14, 2019, Dennis's invoice included fees that may be reimbursed under TP § 14-843(a)(4)(i) only after a complaint has been filed.

Thereafter, on the afternoon of November 14, 2019, several emails and telephone calls were exchanged among Dennis, Geoffrey Polk, Thornton Mellon's counsel, and Kathy Martin, a Collections Specialist for Frederick County. After seeing the invoice charging the new fees, Dennis telephoned Polk at his Chicago office and he agreed that the unauthorized fees would be removed. A new invoice was generated, stating that the amount due was $779.76, which consisted of $500.00 in attorney's fees, a $250.00 title search fee, and a $29.76 postage fee. In other words, the new invoice included only fees under TP § 14-843(a)(3) which may be reimbursed when a complaint to foreclose the right of redemption has not been filed.

At 1:15 p.m., Polk emailed Dennis and Martin about the new invoice, stating in

pertinent part: "This has been updated and fees removed.  If paid by the end of today (and the County is paid) the filing won't be submitted tomorrow.  If it[']s not fully redeemed by today, those fees will be added back in tomorrow."[3]  Polk also asked Martin to "please confirm end of today if this lien has redeemed."  At 1:39 p.m., Martin emailed Polk, stating: "I will need a release when they pay their legal fees before we can accept redemption.  I will wait to see if they pay you and you remit a release to us.  If they in turn pay us, I will let you know."

At approximately 2:00 p.m., Dennis paid Thornton Mellon $801.20, which was the sum of the $779.76 in fees under TP § 14-843(a)(3) and a $21.44 convenience fee for the use of a debit card.  In other words, Dennis paid the original amount due of $779.76 to Thornton Mellon, which included $500.00 for attorney's fees.  At 2:12 p.m., Dennis received an email from Thornton Mellon confirming the payment.  The email confirming receipt of payment contained a link to a release that was to be used by Dennis to make the payment to Frederick County necessary to redeem the Property.  The release stated: "Expiration date: Not Applicable - EXPIRED.  If expired, please check with Attorney Polk" and "[i]t is further understood and agreed, if redemption . . . does not occur on or before Not Applicable - EXPIRED, additional costs may be incurred, and this acknowledgement shall be void.  After such date, a new acknowledgement must be executed in prior to [sic] redemption."  The email included the following language: "The County is cced so that you may redeem the parcel."

---

[3]A review of the email exchanges reveals that the email was sent at 1:15 p.m. Eastern Standard Time.

At 3:17 p.m., Polk emailed Dennis and Martin, asking Martin to "please confirm if this redeems at close of business today." At 3:25 p.m., Martin emailed Polk, stating in pertinent part: "I will. The release you sent said it was expired, but I am putting the other email you sent stating that the additional fees were removed if paid today only. I'll get back to you at end of day[.]" (Paragraph break omitted). At 3:30 p.m., Polk emailed Martin, stating: "Yes, you can allow redemption today, thanks!" Dennis was not included on the 3:25 p.m. and 3:30 p.m. emails between Polk and Martin, which confirmed that the Property could have been redeemed that day with the expired release.

At 4:00 p.m., the Finance Department of Frederick County closed for business.[4] At 4:09 p.m., Dennis emailed Polk, stating in pertinent part that "the tax office would not [ac]cept an 'expired' notice." Dennis further stated that Polk was "making it extremely difficult when added fees are tacked on before the expiration date, I have to wait for a return call, and then you send me a certificate that reads 'EXPIRED' which clearly it was not[.]" At 4:12 p.m., Dennis emailed Polk again, stating, "[and] just to clarify, if today is the deadline, then how can it be 'EXPIRED' the deadline date should read today's date." At 4:38 p.m., Polk emailed Dennis and Martin, stating: "The release is expired because today is the deadline. I've told [Martin] you are allowed to pay the taxes today, so please pay them. Again, there is no extension past today."

The following morning, at 8:48 a.m., Polk emailed Dennis, stating: "Fees have been

---

[4]At 4:21 p.m., Martin emailed Polk, stating in pertinent part: "This did not redeem. . . . If they show up tomorrow, we will have them go online to pay the additional fees." At 4:55 p.m., Polk emailed Martin, stating: "Ok, thank you."

added. I gave you a chance to pay, and you didn't. The [C]ounty was aware that it wasn't expired (hence why it said check with me) and you were aware. Please pay the current fees and the County to redeem. There is nothing else I can do." (Paragraph break omitted). At the time that Polk emailed Dennis, Thornton Mellon had not filed a complaint and thus was not entitled to seek reimbursement for additional fees.

## Filings in the Circuit Court

At 10:06 a.m. on November 15, 2019, in the Circuit Court for Frederick County, Thornton Mellon filed a complaint to foreclose the right of redemption ("the complaint") in which it stated that, to redeem the Property, Dennis would be required to pay Thornton Mellon $2,000.88 in fees and expenses. The complaint stated that the amount necessary for redemption was the sum of any taxes on the Property that had accrued since the tax sale and $5,284.15, which consisted of $3,155.33 in property taxes that Thornton Mellon had paid at the tax sale, $127.94 in interest, and the $2,000.88 in fees and expenses.

Thornton Mellon attached to the complaint an affidavit of compliance and an affidavit indicating that Thornton Mellon was entitled to $1,500.00 in attorney's fees under TP § 14-843(a)(4)(i)2 and other expenses. Specifically, Thornton Mellon attached to the complaint an affidavit dated November 15, 2019 and signed by Christopher Brusznicki, Thornton Mellon's Managing Director, in which Brusznicki indicated that Thornton Mellon was entitled to reimbursement for attorney's fees, property taxes that had been paid,

and other expenses.[5]

On December 27, 2019, Dennis filed an answer, alleging that the fees and expenses that Thornton Mellon requested in the complaint were "improperly inflated, contradictory, and otherwise not in compliance with" TP § 14-843. Dennis asked that the circuit court deny Thornton Mellon's request to foreclose the right of redemption and fix the amount necessary for redemption under TP § 14-829.

On December 29, 2019, Thornton Mellon filed a response to the answer to the complaint, stating that it did not object to the request to redeem and asking that the circuit court give Dennis thirty days to do so. Thornton Mellon stated that the amount of fees and expenses due was $2,033.76. Thornton Mellon attached to the response two invoices dated December 26, 2019. One of the invoices reflected that, on November 14, 2019, $500.00 in attorney's fees, the $250.00 title search fee, and the $29.76 postage fee were paid. Both invoices indicated that there was an amount due of $2,033.76, which consisted of $1,000.00 in attorney's fees, a $465.00 service of process fee, a $245.00 publication fee, a $181.12 filing fee, a $92.64 postage fee, and a $50.00 posting fee.

Thornton Mellon also attached to the response an affidavit dated December 26, 2019 in which Brusznicki averred that Thornton Mellon was entitled to reimbursement for $1,000.00 in attorney's fees under TP § 14-843(a)(4)(i)2. In other words, Thornton Mellon

_____

[5]In the affidavit of compliance dated November 15, 2019, Brusznicki averred that Thornton Mellon sent Dennis two notices indicating that the Property had been sold. Before filing a complaint to foreclose the right of redemption, a tax sale certificate holder must send two notices to the property owner advising that the property had been sold at a tax sale. See TP § 14-833(a-1). Although Dennis disputes that the required notices were sent, resolution of the issue is not material to the questions before us.

- 10 -

credited Dennis the $500 in attorney's fees and other amounts for expenses previously paid and updated its request for attorney's fees under TP § 14-843(a)(4)(i)2 to $1,000.00, in light of the $1,500.00 cap. In the affidavit, Brusznicki averred that Thornton Mellon was entitled to fees and expenses totaling $2,033.76, a slight increase from the $2,000.88 it sought earlier.

On December 31, 2019, Dennis filed an amended answer, repeating the responses from her original answer and alleging that Thornton Mellon had attempted to obtain additional fees by filing the complaint the day after Dennis paid Thornton Mellon. Dennis alleged that, on November 14, 2019, she had telephoned the Finance Department of Frederick County and was advised that she could not redeem the Property because the release provided by Thornton Mellon was labeled expired. In the amended answer, Dennis stated that she was prepared to redeem the Property if Thornton Mellon would eliminate the fees that it charged after November 14, 2019.

On January 6, 2020, Thornton Mellon filed a response to the amended answer, stating that a complaint could have been filed on November 14, 2019 and that it refrained from doing so as a "courtesy" to Dennis. Thornton Mellon alleged that Dennis was clearly advised that she had until the end of the day on November l4, 2019 to pay the County with respect to the tax lien at issue or a foreclosure complaint would be filed and additional fees requested. Thornton Mellon alleged that Dennis lacked the funds to pay the taxes on the Property on November 14, 2019. Thornton Mellon attached to the response an affidavit dated January 6, 2020 in which the Director of the Treasury of Frederick County averred that, on November 14, 2019, no one contacted or visited the Finance Department of

- 11 -

Frederick County to redeem the Property.

In addition to the fees sought under TP § 14-843(a)(4)(i), Thornton Mellon subsequently filed three motions seeking attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii). On January 15, 2020, Thornton Mellon filed a motion for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii), requesting an additional $500.00 in attorney's fees on the ground that Dennis had made discovery requests that were "duplicative" and a "waste of time" and caused Thornton Mellon to incur more costs than it would in a typical tax sale foreclosure case. Thornton Mellon attached to the motion an affidavit dated January 15, 2020 in which Polk averred that the discovery requests pertained to documents required to be submitted with the complaint, that his ordinary rate was $250.00 an hour, and that he spent two hours drafting the discovery materials requested by Dennis and other documents. Polk averred that, to his knowledge, this was the first tax sale foreclosure case in which he had made or received a discovery request. On January 23, 2020, Dennis filed an opposition to the motion, contending that requiring her to pay the requested attorney's fees would be unjust because, among other reasons, the discovery requests were minor.

On February 12, 2020, Thornton Mellon filed a second motion for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii), a motion to strike, a motion to compel, and an opposition to a motion to dismiss that had been filed by Dennis.[6] In the

_____

[6]On February 12, 2020, Dennis filed a motion to dismiss, arguing that dismissal was warranted because Thornton Mellon failed to give her a reasonable opportunity to redeem the Property. Dennis pointed out that she paid Thornton Mellon the fees due on November

second motion for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii), Thornton Mellon requested $1,000.00 in attorney's fees, which consisted of the sum of the $500.00 that it had already requested and an additional $500.00 based on drafting the motions to strike and compel and the opposition to the motion to dismiss.

In the opposition to the motion to dismiss, Thornton Mellon contended that Dennis lacked the funds to pay the taxes on the Property and that her argument that she was not given a reasonable opportunity to redeem the Property was groundless. Thornton Mellon attached to the opposition statements pertaining to Dennis's checking account. One of the checking account statements indicated that, between October 25, 2019 and November 21, 2019, Dennis deposited a total of $800.00 and debited a total of $801.20.[7]

Dennis filed an opposition to the second motion for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii), contending that requiring her to pay the requested attorney's fees would be unjust because, among other reasons, she had advised Thornton Mellon of an issue as to the lack of a second notice of sale before the complaint was filed. Therefore, according to Dennis, it was foreseeable that a motion to dismiss based

---

14, 2019 and asserted that there was no logical reason for her to have done so other than redeeming the Property. Dennis maintained that Thornton Mellon "rushed to file a lawsuit the next day" so that she would be required to pay additional fees. Dennis contended that this was improper because the goal of the tax sale statutes is for the property taxes to be paid, not for the tax sale buyer to be enriched.

[7]In the motion to compel, Thornton Mellon stated that Dennis had failed to comply with its discovery requests for Dennis's phone records from October 1, 2019 to January 5, 2020 and for all emails that she sent or received during that period. In the motion to strike, Thornton Mellon sought to have the circuit court strike exhibits attached to the motion to dismiss, alleging that the exhibits were not properly authenticated under Maryland Rule 5-901.

on the issue would be filed. In addition, Dennis contended that one of the goals of filing the motion to dismiss was to try to resolve issues between the parties without a hearing. Dennis contended that the motion to compel was unnecessary because discovery had been provided.[8]

On February 20, 2020, Thornton Mellon filed a third motion for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii) and a motion to strike the reply to the opposition to the motion to dismiss. In the third motion for attorney's fees, Thornton Mellon requested $1,250.00 in attorney's fees, which consisted of the sum of the $1,000.00 that it had already requested and an additional $250.00 based on drafting the motion to strike the reply to the opposition to the motion to dismiss. Dennis filed an opposition to the third motion for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii), contending that it would be improper to award Thornton Mellon attorney's fees for legal work necessitated by its own actions.

**Hearing, Redemption of the Property, and Memorandum Opinion and Order**

On March 5, 2020, the circuit court held a hearing on the complaint and the outstanding motions. On the day of the hearing, Thornton Mellon's counsel provided Dennis's counsel with a release that would be valid through the following day. The day after the hearing, Dennis redeemed the Property by paying Frederick County the taxes due.

During Thornton Mellon's opening statement, Polk stated that Dennis "was clear

---

[8]Thornton Mellon subsequently filed a withdrawal of the motion to compel, stating that Dennis had provided the requested phone records at issue and that Thornton Mellon withdrew its request for emails.

- 14 -

she had until the end of the day on November 14[, 2019] to redeem" and that she did not do so because she lacked the funds. Polk stated: "[I]n hindsight, I wish that when [Dennis] had called, I had simply instructed my staff to ignore her and file the complaint. . . . [W]e could have easily ignored [] Dennis's call. Nothing in the Code requires me to respond to taxpayers wishing to redeem." Polk stated that, in addition to the $1,250.00 in attorney's fees in exceptional circumstances that Thornton Mellon had moved for in writing, he requested $1,000.00 for preparing for, traveling to, and securing lodging for the hearing. Polk observed that that brought the amount of attorney's fees in exceptional circumstances that Thornton Mellon sought up to $2,250.00. During opening statement, Dennis's counsel stated that the evidence would show that Polk's goal had been to increase his attorney's fees at Dennis's expense and that the release that Thornton Mellon provided to Dennis on November 14, 2019 was invalid because it was labeled expired.

The only witness at the hearing was Dennis, who testified on her own behalf that she grew up on the Property and raised her children there. Dennis testified that she fell behind on paying taxes on the Property because of health issues that resulted in her having a disability. Dennis testified that she received the first notice that the Property had been sold at a tax sale, but she never received a second notice.

Dennis testified that, on or about November 10 or 11, 2019, she sold her grandmother's wedding ring for at least $6,500.00 in cash to obtain money to redeem the Property. Dennis testified that she did not deposit the cash into her checking account because it was her understanding that she could pay Frederick County only in cash or with

a cashier's check.[9]

Dennis testified that on November 12, 2019, she telephoned the Finance Department of Frederick County to ascertain how much in taxes she needed to pay to redeem the Property. According to Dennis, during the telephone call, she was informed that she needed to pay approximately $6,500.00 in taxes and fees to redeem the Property, that she needed a release from the certificate holder that contained an expiration date, and that a release without an expiration date would not be accepted. Dennis was directed to a page on the website of Frederick County that stated that the release necessary for redemption would include an expiration date.

On the same date, Dennis visited Thornton Mellon's website and obtained an invoice stating that the amount of fees due was approximately $779.00.

On November 14, 2019, however, Dennis obtained a new invoice from Thornton Mellon's website stating that the amount of fees due was $2,000.88. Dennis telephoned Thornton Mellon and was advised that the fee would be adjusted. After Dennis paid Thornton Mellon $801.20, Thornton Mellon provided Dennis with the release, which stated that it was expired. Dennis testified that she would have redeemed the Property on November 14, 2019 or on the morning of November 15, 2019 if Thornton Mellon had provided her with a release that was not expired. Dennis explained that she did not attempt to redeem the Property because Frederick County had advised her, and its website

---

[9]Frederick County Code § 1-8-5 states in pertinent part that, "[a]fter 30 days notice of sale has been mailed to property owners . . . , the County Treasurer shall accept only cash, cashier's check, certified check or money order for the payment of such county taxes which are in arrears."

- 16 -

indicated, that the release necessary for redemption must have an expiration date.

During cross-examination, Polk questioned Dennis at length about her checking account statements. Polk elicited that Dennis did not have a receipt or a bill of sale for the sale of her grandmother's wedding ring, that she sold it to "a friend of a friend[,]" and that, on December 16, 2019, Dennis took cash to a bank and received a cashier's check in the amount of $6,265.63 payable to the Treasurer of Frederick County.

During Thornton Mellon's closing argument, Polk asserted that Dennis had sufficient time to redeem the Property but failed to do so because of a lack of funds. The circuit court asked Polk: "Given the fact that [Dennis] had paid you $800 on the fees, what was the rush to file this the next day rather than giving her some additional time to pay?" The circuit court pointed out that, if Dennis "didn't intend to make the payment within a finite period of time, she certainly wouldn't have wasted another $800 on [] fees." The circuit court asked Polk: "[W]hy you couldn't forebear a little bit on this?" Polk responded that "the forbearance was the day of" November 14, 2019 and that he "used to make exceptions regularly, and no one would ever live up to their end of the bargain." Polk stated: "I used to give weeks. I used to give two weeks, I used to give 30 days, and --" The circuit court interjected, asking: "Even after they paid $800?" Polk responded: "I can show you where they've paid $4,000 and don't redeem the property." Polk indicated that he "wasn't rushing to file the case" and that, on November 14, 2019, the complaint was just one of approximately 300 or 400 complaints that were pending in a queue for electronic filing. During closing argument, Dennis's counsel requested that the circuit court deny the motions for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii). At

the conclusion of the hearing, the circuit court took the matter under advisement.

On March 17, 2020, the circuit court issued a memorandum opinion and order denying the motions for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii) and dismissing as moot the complaint, the motion to dismiss, and all other requested relief, which included the request for attorney's fees under TP § 14-843(a)(4)(i). The circuit court determined that, although Thornton Mellon doubted that Dennis would have redeemed the Property between November 13 to 15, 2019, Thornton Mellon's errors deprived Dennis of a meaningful opportunity to redeem the Property. The circuit court determined that Thornton Mellon's goal of maintaining efficient business practices could not supersede its legal obligation not to impede Dennis's efforts to redeem the Property. The circuit court stated that, "[g]iven [Thornton Mellon]'s errors, the filing of the Complaint was premature, and all requests for attorney's fees flow from it. It would be inequitable for the Court to award attorney's fees against [Dennis]."[10] Thornton Mellon appealed.

### Opinion of the Court of Special Appeals

On April 28, 2021, the Court of Special Appeals affirmed the circuit court's judgment dismissing the complaint and concluded that the Property was fully redeemed.

---

[10]In the memorandum opinion, the circuit court pointed out that Thornton Mellon advised the Finance Department without notifying Dennis that the release would be good. The circuit court interpreted the emails between Polk, Martin, and Dennis as showing that the email at 4:38 p.m. was the first instance in which Polk disclosed to Dennis that the release could have been used that day. At the time that Dennis was first advised that she could use the release on November 14, the Finance Department was closed, leaving Dennis without a meaningful opportunity to redeem the Property.

See Thornton Mellon, LLC v. Adrianne Dennis Exempt Tr., 250 Md. App. 302, 333, 250 A.3d 295, 313 (2021).  The Court of Special Appeals was not persuaded by Thornton Mellon's contention that the language of TP § 14-843(a)(4)(i)2 leaves a trial court no choice other than to grant reimbursement for fees and expenses after a complaint has been filed.  See id. at 324, 250 A.3d at 308.  The Court of Special Appeals pointed out that Thornton Mellon sought support from the language in TP § 14-843(a)(4)(i)2 that provides that where an affidavit has been filed, $1,500.00 "shall be deemed reasonable" for the preparation and filing of an action.  See id. at 324-25, 250 A.3d at 308.  In interpreting the language of TP § 14-843(a)(4)(i)2, the Court of Special Appeals concluded that the language that Thornton Mellon referred to related only to the monetary amount that would be reimbursed if a trial court determined that reimbursement is appropriate.  See id. at 324-25, 250 A.3d at 308.  The Court of Special Appeals concluded that the mandatory language of "shall be deemed reasonable" did not supersede the permissive language in the earlier clause of TP § 14-843(a)(4)(i)2, which states that attorney's fees "may be reimbursed[.]" Id. at 324-25, 250 A.3d at 308.  The Court of Special Appeals explained that "[t]o say that the amount of $1,500 of attorney's fees 'shall be deemed reasonable' is not the same thing as saying that the court shall permit reimbursement in every case, regardless of the circumstances."  Id. at 324-25, 250 A.3d at 308.

The Court of Special Appeals held that, under TP § 14-843, a trial court has "at least some discretion to decide whether the plaintiff or certificate holder should be reimbursed for attorney's fees and other expenses incurred in connection with a complaint to foreclose the right of redemption."  Id. at 325, 250 A.3d at 308.  The Court of Special Appeals

explained that the legislative history of the statute demonstrated that the phrase "is entitled to be reimbursed" was replaced with the phrase "may be reimbursed" and that the General Assembly expressed its intent and purpose clearly enough that the Court did not need to examine other potential sources of legislative intent. Id. at 323, 325 n.10, 250 A.3d at 307, 309 n.10.

The Court of Special Appeals held that the circuit court's finding that Thornton Mellon impeded Dennis's redemption of the Property was not clearly erroneous and that the circuit court did not abuse its discretion in determining that it would be inequitable to award Thornton Mellon attorney's fees. See id. at 332, 250 A.3d at 312. The Court of Special Appeals explained that "a property owner cannot exercise the statutory right of redemption without some reasonable level of cooperation from the certificate holder." Id. at 326, 250 A.3d at 309. The Court of Special Appeals stated that because redeeming property requires that a property owner pay the certificate holder fees and expenses in advance, and in Frederick County the property owner must obtain a written release from the certificate holder, "the redemption process is set up in such a way that makes it possible for a certificate holder (whether intentionally or unintentionally) to frustrate the redemption process once it is initiated." Id. at 326, 250 A.3d at 309. The Court of Special Appeals stated that it was the circuit court's prerogative to find credible "Dennis's testimony that she would have redeemed the [P]roperty if Thornton Mellon had met its obligation to give her an acceptable release." Id. at 329, 250 A.3d at 311.

The Court of Special Appeals disagreed with Thornton Mellon's assertion that the circuit court apparently determined that Dennis's ability to pay was "irrelevant." Id. at

331, 250 A.3d at 312. The Court of Special Appeals explained that "[e]verything that the court wrote about [] Dennis's actions conveys a conclusion that she would have redeemed the [P]roperty if not for the impediments created by Thornton Mellon." Id. at 331, 250 A.3d at 312. The Court of Special Appeals stated that "[i]t would be a waste of time and resources to remand this case to the trial court for the sole purpose of requiring the judge to expressly state what was already fairly implied." Id. at 331, 250 A.3d at 312.

The Court of Special Appeals concluded that the circuit court's finding of inequity for an award of attorney's fees for preparing and filing the complaint supported its decision to deny Thornton Mellon's motions for extraordinary fees under TP § 14-843(a)(4)(iii). See id. at 332, 250 A.3d at 312. The Court of Special Appeals pointed out that the language in TP § 14-843(a)(4)(iii) concerning reimbursement of attorney's fees in exceptional circumstances makes clear that the decision is plainly within a trial court's discretion. See id. at 332, 250 A.3d at 312-13.

## Petition for a Writ of *Certiorari*

On June 15, 2021, Thornton Mellon petitioned for a writ of *certiorari*, raising the following six issues:

1. Whether "impeded redemption," a doctrine created by the trial court and upheld by the [Court of Special Appeals], can be employed in tax sale cases as a basis to dismiss timely-filed complaints to foreclose rights of redemption and deny statutory attorneys' fees, where []TP[] § 14-829 specifically provides a redemption procedure when the amount in redemption is in dispute after a complaint is filed?

2. Whether a property owner who fails to redeem a property for six months after a tax sale can avoid owing additional statutory attorneys' fees under the impeded redemption doctrine without proving they had the ability to redeem the property prior to the filing of the complaint to foreclose right

of redemption?

3. Whether a tax sale purchaser, after waiting the requisite six months after a tax sale, is required to delay filing a complaint to foreclose right of redemption if the owner of the property states an intent to redeem the property?

4. Whether a tax sale purchaser can be deemed to have filed a complaint to foreclose right of redemption "prematurely" if the complaint is filed more than the requisite six months after the tax sale?

5. Was the [Court of Special Appeals] correct to find that the trial court committed no errors in dismissing Petitioner's Complaint and denying its requests for attorneys' fees based on the impeded redemption doctrine, where Respondent failed to attempt to redeem the Subject Property in accordance with TP § 14-829, conceded that she was aware of her ability to redeem the Subject Property minutes after paying fees to Petitioner, and otherwise did not provide any evidence of her ability to redeem prior to Petitioner filing its Complaint?

6. Was the [Court of Special Appeals] correct to find that the trial court acted within its discretion in denying Petitioner's motions for extraordinary attorneys' fees, when the trial court did not review the requests for fees on the merits and denied them solely on the basis that they flowed from Petitioner's "premature" Complaint?

(Footnote omitted). On August 25, 2021, we granted the petition. See Thornton Mellon

LLC v. Adrianne Dennis Exempt Tr., 475 Md. 701, 257 A.3d 1163 (2021).[11]

---

[11]There are six questions presented in the petition for a writ of *certiorari*. Although worded differently, questions 1, 2, and 5 raise the issue of whether the award of attorney's fees under TP § 14-843(a)(4)(i)2 is mandatory or discretionary and whether a certificate holder can be found to have impeded an owner's ability to redeem property. Questions 3 and 4 apparently raise an issue as to the timing of the filing of a complaint after a tax sale. Question 6 raises the issue of whether the circuit court in this case abused its discretion in denying motions for extraordinary attorney's fees under TP § 14-843(a)(4)(iii). Given the interrelated nature of the questions, we discuss the issues together below.

- 22 -

## DISCUSSION

### The Parties' Contentions

In setting forth its statement of the case and facts, Thornton Mellon advises that the circuit court denied its request for statutory fees in the amount of $2,033.76 (including attorney's fees under TP § 14-843(a)(4)(i)2) and denied under TP § 14-843(a)(4)(iii) three motions for attorney's fees in exceptional circumstances and an additional request for attorney's fees of $1,000 for preparing for and attending a hearing in the case. Thornton Mellon contends that reimbursement of attorney's fees under TP § 14-843(a)(4)(i)2 is mandatory and that once the complaint was filed on November 15, 2019, it was entitled to attorney's fees under TP § 14-843(a)(4)(i). Thornton Mellon asserts that "[t]here is nothing in the law that obliged [it] to delay the filing of its [c]omplaint because [Dennis] 'feigned' an intent to redeem the [] Property." Thornton Mellon takes issue with the circuit court's finding that it committed errors which impeded Dennis's ability to redeem the Property and labels the circuit court's finding as creating an "impeded redemption doctrine." According to Thornton Mellon, it was not necessary for the circuit court to create, and the Court of Special Appeals to uphold, what it calls an impeded redemption doctrine because TP § 14-829 sets forth procedures under which a property owner may dispute the redemption amount of a property.

Thornton Mellon maintains that adopting an impeded redemption doctrine would be superfluous in light of TP § 14-829 and would raise various unanswerable questions for tax sale certificate holders, such as whether they must hold off on filing a complaint to foreclose the right of redemption where an owner claims an intent to redeem the property.

Thornton Mellon contends that, if an impeded redemption doctrine is upheld, for the doctrine to apply, a property owner must be required to prove by clear and convincing evidence, among other things, that the owner had the funds necessary to redeem the property when the tax sale certificate holder filed the complaint. Thornton Mellon argues that it did not impede Dennis's efforts to redeem the Property, and alleges that she lacked the funds to do so at the relevant time. Thornton Mellon asserts that the circuit court's finding that Dennis was impeded from redeeming the Property is clearly erroneous and that the circuit court erred in finding its complaint moot.

In addition, Thornton Mellon contends that the circuit court did not address the merits of its requests for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii) and that the case should be remanded for consideration of the issue. Thornton Mellon argues that the circuit court's denial of the motions was based on an erroneous determination that the complaint was premature and that it impeded Dennis's efforts to redeem the Property. Thornton Mellon maintains that reimbursement of attorney's fees under TP § 14-843(a)(4)(iii) was warranted because Dennis unnecessarily caused Thornton Mellon to incur additional litigation expenses.

Dennis responds that the reimbursement of attorney's fees under TP § 14-843(a)(4)(i)2 is discretionary rather than mandatory and that the circuit court did not abuse its discretion in denying reimbursement. Dennis contends that the circuit court did not create an impeded redemption doctrine and instead simply determined that, in light of Thornton Mellon's conduct in the case, it would be inequitable to award Thornton Mellon attorney's fees. Dennis argues that the evidence supports the circuit court's finding that

- 24 -

she would have been able to redeem the Property had Thornton Mellon not prevented her from doing so. Among other things, Dennis asserts that Thornton Mellon frustrated her ability to redeem the Property by failing to provide a proper release and incorrectly indicating on the morning of November 15, 2019 that it had already filed a complaint.

In addition, Dennis contends that the circuit court has discretion to determine whether attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii) are reimbursable and, in this case, reimbursement of such fees was not warranted. Dennis argues that the legislative history of TP § 14-843(a)(4)(iii) indicates that attorney's fees for exceptional circumstances may be reimbursed only for actions taken by a tax sale certificate holder's attorney before the filing of a complaint. Dennis asserts that upholding the circuit court's decision would promote justice and fairness in the tax sale process and help to curtail abuses by tax sale certificate holders who go too far in collection efforts.

## Standard of Review

Maryland Rule 8-131(c) concerns review of a trial court's decision without a jury and provides: "When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence." The appellate court "will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses." Id. "An appellate court reviews without deference a trial court's interpretation of a statute." Sabisch v. Moyer, 466 Md. 327, 349, 220 A.3d 272, 284 (2019) (cleaned up).

## Provisions in the Tax-Property Article

TP § 14-827 governs a property owner's right of redemption and provides that an

owner of property sold at a tax sale "may redeem the property at any time until the right of redemption has been finally foreclosed[.]" TP § 14-833(b) states that "[t]he right to redeem shall continue until finally barred by decree of the circuit court in which the foreclosure proceeding is filed." TP § 14-828(a)(1) describes what a property owner must pay to redeem the property, stating in pertinent part:

If the property is redeemed, the person redeeming shall pay the collector:

(i) the total lien amount paid at the tax sale for the property together with interest;

(ii) any taxes, interest, and penalties paid by any holder of the certificate of sale;

(iii) except as provided under paragraph (2) of this subsection, any delinquent taxes, interest, and penalties accruing after the date of the tax sale; [and]

(iv) in the manner and by the terms required by the collector, any expenses or fees for which the plaintiff or the holder of a certificate of sale is entitled to reimbursement under § 14-843 of this subtitle[.]

TP § 14-843 governs the expenses and fees for which the tax sale certificate holder may be reimbursed when a property is redeemed. See TP § 14-843(a)(1). TP § 14-843(a)(1) states that, except as provided in TP § 14-843(b), "on redemption, the plaintiff or the holder of a certificate of sale may be reimbursed for expenses incurred in any action or in preparation for any action to foreclose the right of redemption as provided in" TP § 14-843. TP § 14-843(a)(2) states that "[t]he plaintiff or holder of a certificate of sale is not entitled to be reimbursed for any other expenses or attorney's fees that are not included in" TP § 14-843. Relevant here, TP § 14-843(a)(3)(i) sets forth expenses that may be reimbursable more than four months after the date of the tax sale and before an action to

- 26 -

foreclose the right of redemption has been filed, stating:

> [I]f an action to foreclose the right of redemption has not been filed, and the property is redeemed more than 4 months after the date of the tax sale, the holder of a certificate of sale may be reimbursed for the following expenses actually incurred:
>
>> 1. costs for recording the certificate of sale;
>>
>> 2. a title search fee, not to exceed $250;
>>
>> 3. the postage and certified mailing costs for the notices required under § 14-833(a-1) of this subtitle; and
>>
>> 4. reasonable attorney's fees, not to exceed $500.[12]

By contrast, TP § 14-843(a)(4) sets forth the fees and expenses that may be reimbursed where a property is redeemed after an action to foreclose the right of redemption has been filed, stating:

> If an action to foreclose the right of redemption has been filed, the plaintiff or holder of a certificate of sale may be reimbursed for:
>
>> (i) attorney's fees in the amount of:
>>
>>> 1. $1,300 if an affidavit of compliance[13] has not been filed, which amount shall be deemed reasonable for both the preparation and filing of the action to foreclose the right of redemption; or
>>>
>>> 2. $1,500 if an affidavit of compliance has been filed, which amount shall be deemed reasonable for both the preparation and filing of the action to foreclose the right of redemption;

---

[12]TP § 14-843(a)(3)(ii) governs reimbursable expenses for owner-occupied residential property in Baltimore City, if an action to foreclose the right of redemption has not been filed.

[13]An affidavit of compliance is an affidavit in which the certificate holder attests to compliance with the notice provisions of TP § 14-833(a-1). See TP § 14-833(a-1)(8). The certificate holder is required under TP § 14-833(a-1) to send two notices of the tax sale to the property owner.

(ii) reasonable attorney's fees, not to exceed $1,200, incurred by the plaintiff or holder of a certificate of sale for opening an estate for purposes of service of process and notice on a defendant's estate;

(iii) in exceptional circumstances, other reasonable attorney's fees incurred and specifically requested by the plaintiff or holder of a certificate of sale and approved by the court, on a case by case basis; and

(iv) if the plaintiff or holder of a certificate of sale provides a signed affidavit attesting to the fact that the expenses were actually incurred, the following expenses actually incurred by the plaintiff or holder of a certificate of sale:

1. filing fee charged by the circuit court for the county in which the property is located;

2. service of process fee, including fees incurred attempting to serve process;

3. a title search fee, not to exceed $250;

4. if a second title search is conducted more than 6 months after the initial title search, a title search update fee, not to exceed $75;

5. publication fee charged by a newspaper of general circulation in the county in which the property is located;

6. posting fee;

7. postage and certified mail;

8. substantial repair order fee, not to exceed the fee charged by the government agency issuing the certificate of substantial repair;

9. expenses and costs incurred for opening an estate of a deceased defendant for purposes of service of process and notice, not to exceed $1,200; and

10. any court approved expense for stabilization or conversion of the property under § 14-830 of this subtitle or in accordance with an action taken against the property by the county in which the property is located in accordance with the applicable building, fire, health, or safety codes.

Under TP § 14-843(b)(1)(i), in certain jurisdictions, including Frederick County, "the plaintiff or holder of a certificate of sale may not be reimbursed for expenses incurred within 4 months after the date of sale."  TP § 14-832 states:

> The provisions of §§ 14-832.1 through 14-854 of this subtitle shall be construed to ensure a balance between:
>
> (1) the due process and redemption rights of persons that own or have an interest in property sold at a tax sale; and
>
> (2) the public policy of providing marketable title to property that is sold at a tax sale through the foreclosure of the right of redemption.

**Analysis**

*Plain Language of TP § 14-843(a)(4)(i)*

In this case, we conclude that the circuit court did not err in declining to award attorney's fees and the Court of Special Appeals did not err in determining that the reimbursement of attorney's fees under TP § 14-843(a)(4)(i) is discretionary.  Our conclusion is compelled by the plain language of TP § 14-843(a)(4), which provides that, if an action to foreclose the right of redemption, *i.e.*, a complaint, has been filed, the plaintiff or tax sale certificate holder "may be reimbursed" for certain expenses, including attorney's fees.  This language, specifically the use of the word "may," demonstrates that reimbursement is permissive and not mandatory, such as it would be if the statute provided that such fees "shall" be reimbursed.  We have consistently interpreted the use of the word "may" in a statute to be permissive and thus discretionary, not mandatory, language.  See Uthus v. Valley Mill Camp, Inc., 472 Md. 378, 393-94, 246 A.3d 1225, 1234 (2021).  For instance, in WSC/2005 LLC v. Trio Ventures Assocs., 460 Md. 244, 270, 190 A.3d 255,

- 29 -

270 (2018), we discussed statutes that used the term "may" and noted that we had held that the language in such statutes was permissive. As such, in WSC/2005 LLC, id. at 269, 271, 190 A.3d at 269, 270, consistent with the interpretation of statutes that used "may," we determined "that an award of attorney's fees to a prevailing party" under a statute that provided that a "court may award costs of the petition, the subsequent proceedings, and disbursements" was "merely discretionary and not required" and, accordingly, the trial court's decision not to award attorney's fees in that case was not an abuse of discretion. By contrast, we have long recognized that use of the word "shall" in a statute "indicates the legislative intent that the statute be mandatory." Uthus, 472 Md. at 394, 246 A.3d at 1235 (citations omitted).

Pursuant to the well-established principles of statutory construction, our goal "is to ascertain and effectuate the actual intent of the General Assembly." Mercer v. Thomas B. Finan Ctr., 476 Md. 652, 694, 265 A.3d 1044, 1069 (2021) (cleaned up). We first examine the plain meaning of the statutory language and, "if the language is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry generally ceases at that point and we apply the statute as written." Id. at 694-95, 265 A.3d at 1069 (cleaned up). In other words, we interpret the plain meaning of a statute to give effect to the unambiguous language (if, indeed, the language is unambiguous) and need not resort to a review of the legislative history.

The plain language of TP § 14-843(a)(4)(i), namely the use of the phrase "may be reimbursed for," clearly provides the trial court with discretion as to whether to order reimbursement of attorney's fees after an action to foreclose the right of redemption has

been filed, *i.e.*, the language is unambiguous. Put simply, the statutory language unequivocally vests the trial court with discretion to order reimbursement of attorney's fees—the trial court may or may not order reimbursement. We wholly agree with the Court of Special Appeals's determination in this case that the plain language of TP § 14-843(a)(4)(i)2 is permissive. See Thornton Mellon, 250 Md. App. at 324-25, 250 A.3d at 308.

We are not persuaded by Thornton Mellon's contention that reimbursement of attorney's fees is mandatory rather than discretionary because TP § 14-843(a)(4)(i)2 states that the amount of $1,500.00 "shall be deemed reasonable[.]" According to Thornton Mellon, that language conflicts with the phrase "may be reimbursed" in TP § 14-843(a)(4). There is no such conflict. The phrase "may be reimbursed" in TP § 14-843(a)(4) establishes that reimbursement of fees, including attorney's fees, is discretionary. A trial court is not required to award attorney's fees simply because the statute states that $1,300.00 and $1,500.00 are amounts that "shall be deemed reasonable"—that is, those amounts are reasonable if the court, in its discretion, decides to award fees. The language in TP § 14-843(a)(4)(i) concerning the amounts that shall be deemed reasonable does not override or supersede the language stating that fees and expenses "may be reimbursed[.]" Rather, in its entirety, the plain language of the statute demonstrates that a trial court may make a discretionary determination as to whether attorney's fees will be reimbursed, and in the event that the court determines that attorney's fees are to be reimbursed, the amounts of $1,300.00 and $1,500.00 shall be deemed reasonable.

The General Assembly has made clear through the plain language of the statute that,

in a tax sale foreclosure case, any and all fees and expenses—whether they are attorney's fees or other types of fees, and whether they are under TP § 14-843(a)(3) or under TP § 14-843(a)(4)—are discretionary, not mandatory. Throughout TP § 14-843(a), the phrase "may be reimbursed" is repeatedly used. TP § 14-843(a)(1), (a)(3)(i), (a)(3)(ii), (a)(4), (a)(5). As such, the language of the statute is clear and unambiguous, and our analysis could end here without examining the legislative history of the statute. Nonetheless, a review of the relevant legislative history confirms the General Assembly's intent as expressed by the plain language of the statute and supports the conclusion that reimbursement of attorney's fees under TP § 14-843(a)(4)(i) (or TP § 14-843(a)(4)(iii) for that matter) is discretionary, not mandatory.

### Legislative History of TP § 14-843

The legislative history of TP § 14-843 readily reinforces that the reimbursement of fees and expenses is discretionary, not mandatory. In addition, the legislative history of the tax sale statutes confirms the General Assembly's intent to make reimbursement of attorney's fees discretionary and encourage redemption.

Limitations on attorney's fees and expenses in tax sales have evolved over time. Although TP § 14-843(a) sets forth several limitations on the attorney's fees and expenses for which a tax sale certificate holder may be reimbursed upon redemption, early versions of that provision did not do so. Previously, the ceiling on attorney's fees set forth in Md. Code Ann., Tax-Prop. (1986, 2001 Repl. Vol., 2002 Supp.) ("TP (2002)") § 14-843(a) was a $400.00 cap on attorney's fees for each tax sale certificate. See 2003 Md. Laws 1267 (Vol. II, Ch. 109, S.B. 726). TP (2002) § 14-843(a) stated in pertinent part:

[O]n redemption, the plaintiff or the holder of a certificate of sale is entitled to be reimbursed for expenses incurred in any action or in preparation for any action to foreclose the right of redemption. In addition, the plaintiff or holder of a certificate of sale, on redemption, **is entitled to be reimbursed** for fees paid for recording the certificate of sale, **for attorney's fees in the sum of $400 for each certificate of sale**, for expenses incurred in the publication and service of process by publication, for reasonable fees for a necessary title search, and for taxes, together with interest and penalties on the taxes, arising after the date of sale that have been paid by the plaintiff, including, in Baltimore City only, taxes, interest, and penalties paid in accordance with subsection (c) of this section and interest at the rate of redemption provided in § 14-820 of this subtitle from the date of payment to the date of redemption. The plaintiff or holder of a certificate of sale is not entitled to be reimbursed for any other expenses.

Id. (emphasis added).

In 2003, the General Assembly amended TP (2002) § 14-843(a) by replacing the phrase "for attorney's fees in the sum of $400 for each certificate of sale" with the phrase "for reasonable attorney's fees, provided that the fees may not exceed $400 unless an action to foreclose the right of redemption has been filed[.]" Id. In doing so, the General Assembly created a distinction between attorney's fees that could be reimbursed prior to an action to foreclose the right of redemption having been filed and attorney's fees reimbursable afterward and made the $400.00 cap apply only to the former. See id. As a result, there was no cap on attorney's fees that could be reimbursed after an action to foreclose the right of redemption had been filed. See id. The requirement was simply that the fees had to be "reasonable[.]" Id.

Four years later, under Md. Code Ann., Tax-Prop. (1986, 2007 Repl. Vol.) ("TP (2007)") § 14-843(a), there was still no cap on attorney's fees that were reimbursable after the filing of an action to foreclose the right of redemption. See 2008 Md. Laws 2814 (Vol.

IV, Ch. 333, S.B. 854); 2008 Md. Laws 2827 (Vol. IV, Ch. 334, H.B. 1211). TP (2007) § 14-828(a)(4) set forth a requirement that the property owner either pay the local tax collector the fees and expenses due under TP (2007) § 14-843 or provide the local tax collector with a release or acknowledgment from the tax sale certificate holder. See id. at 2808, 2821.

In 2008, the General Assembly made major changes to the statutory scheme that governs tax sales. See id. at 2805-06, 2819. The acts through which the General Assembly made these changes stated that the acts were "emergency measure[s]" and were "necessary for the immediate preservation of the public health or safety," passed by veto-proof majorities in both houses, and became effective immediately. Id. at 2818, 2831. The General Assembly amended, among other statutes, TP (2007) §§ 14-843, 14-832, and 14-828. See id. at 2805, 2819. The General Assembly amended TP (2007) § 14-843(a) in pertinent part as follows:

> (1) Except as provided in subsection (b) of this section, on redemption, the plaintiff or the holder of a certificate of sale **is entitled to MAY be reimbursed** for expenses incurred in any action or in preparation for any action to foreclose the right of redemption AS PROVIDED IN THIS SECTION. ~~In addition, the plaintiff or holder of a certificate of sale, on redemption, is entitled to be reimbursed for fees paid for recording the certificate of sale, for reasonable attorney's fees, provided that the fees may not exceed $400 unless an action to foreclose the right of redemption has been filed, for expenses incurred in the publication and service of process by publication, for reasonable fees for a necessary title search, and for taxes, together with interest and penalties on the taxes, arising after the date of sale that have been paid by the plaintiff, including, in Baltimore City only, taxes, interest, and penalties paid in accordance with subsection (c) of this section and interest at the rate of redemption provided in § 14-820 of this subtitle from the date of payment to the date of redemption.~~

> (2) The plaintiff or holder of a certificate of sale is not entitled to be

reimbursed for any other expenses OR ATTORNEY'S FEES THAT ARE NOT INCLUDED IN THIS SECTION.

(3) IF AN ACTION TO FORECLOSE THE RIGHT OF REDEMPTION HAS NOT BEEN FILED, AND THE PROPERTY IS REDEEMED MORE THAN 4 MONTHS AFTER THE DATE OF THE TAX SALE, THE HOLDER OF A CERTIFICATE OF SALE MAY BE REIMBURSED FOR THE FOLLOWING EXPENSES ACTUALLY INCURRED:

(I) ATTORNEY'S FEES FOR RECORDING THE CERTIFICATE OF SALE;

(II) A TITLE SEARCH FEE, NOT TO EXCEED $250; AND

(III) REASONABLE ATTORNEY'S FEES, NOT TO EXCEED $500.

(4) IF AN ACTION TO FORECLOSE THE RIGHT OF REDEMPTION HAS BEEN FILED, THE PLAINTIFF OR HOLDER OF A CERTIFICATE OF SALE MAY BE REIMBURSED FOR:

(I) ATTORNEY'S FEES IN THE AMOUNT OF:

1. $1,300 IF AN AFFIDAVIT OF COMPLIANCE HAS NOT BEEN FILED, WHICH AMOUNT SHALL BE DEEMED REASONABLE FOR BOTH THE PREPARATION AND FILING OF THE ACTION TO FORECLOSE THE RIGHT OF REDEMPTION; OR

2. $1,500 IF AN AFFIDAVIT OF COMPLIANCE HAS BEEN FILED, WHICH AMOUNT SHALL BE DEEMED REASONABLE FOR BOTH THE PREPARATION AND FILING OF THE ACTION TO FORECLOSE THE RIGHT OF REDEMPTION; [AND]

(II) IN EXCEPTIONAL CIRCUMSTANCES, OTHER REASONABLE ATTORNEY'S FEES INCURRED AND SPECIFICALLY REQUESTED BY THE PLAINTIFF OR HOLDER OF A CERTIFICATE OF SALE AND APPROVED BY THE COURT, ON A CASE BY CASE BASIS[.]

Id. at 2814-16, 2827-29 (emphasis added).  The General Assembly amended TP (2007) §

14-832 as follows:

> The provisions of §§ 14-832.1 through 14-854 of this subtitle shall be ~~liberally~~ construed ~~as remedial legislation to encourage the foreclosure of rights of redemption by suits in the circuit courts and for the decreeing of marketable titles to property sold by the collector~~ TO ENSURE A BALANCE BETWEEN:
>
> > (1) THE DUE PROCESS AND REDEMPTION RIGHTS OF PERSONS THAT OWN OR HAVE AN INTEREST IN PROPERTY SOLD AT A TAX SALE; AND
> >
> > (2) THE PUBLIC POLICY OF PROVIDING MARKETABLE TITLE TO PROPERTY THAT IS SOLD AT A TAX SALE THROUGH THE FORECLOSURE OF THE RIGHT OF REDEMPTION.

Id. at 2809, 2823. The General Assembly amended TP (2007) § 14-828(a)(4) as follows:

> If the property is redeemed, the person redeeming shall pay the collector[,] ~~unless the party redeeming furnishes the collector a release or acknowledgment executed by the plaintiff or holder of the certificate of sale that all actual expenses or fees under § 14-843 of this subtitle have been paid to the plaintiff or holder of the certificate of sale,~~ IN THE MANNER AND BY THE TERMS REQUIRED BY THE COLLECTOR, any expenses or fees for which the plaintiff or the holder of a certificate of sale is entitled to reimbursement under § 14-843 of this subtitle[.]

Id. at 2808, 2821.

The Revised Fiscal and Policy Notes of Senate Bill 854 (2008) ("S.B. 854") and House Bill 1211 (2008) ("H.B. 1211"), through which the General Assembly made the amendments, summarized the most significant changes, in relevant part, as follows:

- allowing the taxing jurisdiction to determine the manner and terms by which a holder of a certificate of sale is to be paid for expenses and fees incurred;

- providing for additional notice requirements from the tax collector and the holder of a tax sale certificate to the property owner before a right of redemption may be foreclosed;

- placing caps on the amount of attorney's fees that a certificate holder can charge a property owner upon redemption, with the amount varying slightly depending on whether an affidavit of compliance has been filed; and

- itemization and caps on various expenses that a tax sale certificate holder may charge a property owner upon receiving a certificate of sale and the redemption of that certificate.

S.B. 854 Revised Fiscal and Policy Note at 2, <u>available at</u> https://mgaleg.maryland.gov/ 2008rs/fnotes/bil_0004/sb0854.pdf [https://perma.cc/332L-KT7A]; H.B. 1211 Revised Fiscal and Policy Note at 2, <u>available at</u> https://mgaleg.maryland.gov/2008rs/fnotes/bil_ 0001/hb1211.pdf [https://perma.cc/5AWC-74AR].

On February 13, 2008, S.B. 854 was introduced and read for the first time. <u>See</u> S.B. 854 (First Reading) at 1, <u>available at</u> https://mgaleg.maryland.gov/2008rs/bills/sb/ sb0854f.pdf [https://perma.cc/QZA6-MLWF]. The first version of S.B. 854 was identical to that H.B. 1211. <u>See</u> <u>id.</u> at 1-4; H.B. 1211 (First Reading) at 1-4. Shortly thereafter, in letters to committees of the House of Delegates and Senate dated March 6, 2008, and March 13, 2008, respectively, the Public Justice Center advised that "[a] diverse work group was convened to study [the] issue" of possible reform of the conduct of tax sales. The Public Justice Center stated that the work group was comprised of itself, Baltimore City, Prince George's County, the Maryland Association of Counties, Incorporated, a member of the Senate, and several attorneys who represented tax sale buyers. The Public Justice Center indicated that the work group reached a consensus concerning recommending amendments as to both S.B. 854 and H.B. 1211.

On March 18 and 20, 2008, amended versions of H.B. 1211 and S.B. 854,

respectively, were read.  See H.B. 1211 (Second Reading) at 1, available at https://mgaleg.

maryland.gov/2008rs/bills/hb/hb1211t.pdf   [https://perma.cc/AA3X-JY43];   S.B.   854

(Second Reading) at 1, available at https://mgaleg.maryland.gov/2008rs/bills/sb/sb0854t.

pdf [https://perma.cc/TUF2-HBPS].  The amendments to H.B. 1211 and S.B. 854 were

identical to each and substantial.  See H.B. 1211 (Second Reading) at 1-14; S.B. 854

(Second Reading) at 1-14.  Among the many proposed changes to TP (2007) § 14-843(a)

were, as set forth above, replacing the phrase "is entitled to be reimbursed for attorney's

fees" with the phrase "may be reimbursed for[] attorney's fees[,]" adding that $1,500.00 or

$1,300.00 in attorney's fees "shall be deemed reasonable[,]" and including the language

about attorney's fees being reimbursable in exceptional circumstances that is now in TP §

14-843(a)(4)(iii).  See H.B. 1211 (Second Reading) at 10-12; S.B. 854 (Second Reading)

at 10-12.

The Public Justice Center's letters indicate that the consensus that the work group

reached as to the amendments to S.B. 854 and H.B. 1211 was presented in a document

titled "Tax Sales Amendment Explanation Provided by Baltimore City" ("the Tax Sales

Amendment Explanation"), which is in the bill file of H.B. 1211.  The Tax Sales

Amendment Explanation summarized the reasons for several of the work group's

proposals, which were included in the amended versions of S.B. 854 and H.B. 1211.  The

Tax Sales Amendment Explanation indicated that the $1,500.00 and $1,300.00 caps on

attorney's fees in what is now TP § 14-843(a)(4)(i) were adopted from a decision of the

Honorable Evelyn Omega Cannon, who studied the issue.  According to the Public Justice

Center's letters, after being tasked with administering nearly 4,000 tax sale foreclosure

cases pending in the Circuit Court for Baltimore City, in December 2007, Judge Cannon issued an opinion finding that, in many tax sale foreclosure cases, attorney's fees were not properly documented or calculated. According to the Public Justice Center, Judge Cannon determined that, depending on the circumstances of each tax sale foreclosure case, either $1,500.00 or $1,300.00 was a reasonable amount of attorney's fees.

The Tax Sales Amendment Explanation stated that the word "entitled" was replaced with the word "may" in what is now TP § 14-843(a) to give "some opportunity for lawyers to charge less and for judges to be able to knock down fees." According to the Tax Sales Amendment Explanation, what is now TP § 14-843(a)(4)(iii) "was added to account for a case of exceptional circumstances where a purchaser has to go to extraordinary measures to foreclose on a property – for instance, the property belongs to a trust with 50 people to be served, a person's assets are frozen, etc." According to the Tax Sales Amendment Explanation, such exceptional circumstances were "very rare, estimated to be 1% of the time[,] and the onus is on the purchaser to petition [] the court to increase the fees and expenses."

In written testimony presented to the Budget and Taxation Committee on March 13, 2008, Senator Verna L. Jones, one of the sponsors of S.B. 854, acknowledged that "[t]he most controversial part of [the] bill" concerned attorney's fees. According to Senator Jones, "[t]he good news" was that S.B. 854 would largely codify a ruling by a member of the Circuit Court for Baltimore City (*i.e.*, Judge Cannon) "limiting these fees due to the abuses by the legal community as a result of the General Assembly's changes that allowed for 'reasonable fees.'" Senator Jones testified that "[t]hese fees have been anything but

reasonable[.]"

As demonstrated, under the earlier versions of TP § 14-843 in effect from 2003 to 2008, tax sale certificate holders were "entitled to be reimbursed for" fees and expenses, and there was no cap on attorney's fees that were reimbursable after an action foreclosing the right of redemption had been filed—they simply had to be "reasonable[.]" 2003 Md. Laws 1267; 2008 Md. Laws 2814, 2827. It is clear from the legislative history of the statute that the General Assembly replaced the word "entitled" with the word "may" in TP § 14-843(a) to give trial courts the discretion not to award all requested fees and expenses. This change alone is a sufficient manifestation of legislative intent on which to conclude, along with the unambiguous language of the statute, that reimbursement of attorney's fees under TP § 14-843 is discretionary.

In addition, there are other indications in the legislative history of the tax sale statutes that support the same conclusion. According to the letters from the Public Justice Center, during the five-year period from 2003 to 2008 under the earlier version of the statute, the amounts of "reasonable" attorney's fees skyrocketed as high as $6,000.00 or $7,000.00, frequently preventing redemption. Compounding this problem was the circumstance that, under TP (2007) § 14-832 and its predecessors, courts were required to liberally construe the statutes governing tax sales to encourage the foreclosure of the right of redemption. See id. at 2809, 2823.

In 2008, the General Assembly enacted what it identified as emergency measures to overhaul the statutes governing tax sales. See id. at 2805-06, 2818-19, 2831. Among other amendments to TP § 14-843(a), the General Assembly made reimbursement of all fees and

expenses discretionary rather than mandatory by replacing the phrase "entitled to be reimbursed for" with the phrase "may be reimbursed for" and created a $1,300.00 or $1,500.00 cap on attorney's fees that are reimbursable after an action foreclosing the right of redemption has been filed.  See id. at 2814-17, 2827-30.  Further, the General Assembly amended TP § 14-832 to provide that a court must construe TP §§ 14-832.1 through 14-854—which includes TP §§ 14-833 and 14-843—to strike a balance between the property owner's right of redemption and due process rights and the public policy of providing marketable title to the property through foreclosure of the right of redemption.

After the 2008 amendments, by their plain language, the statutes governing tax sales encouraged redemption.  With the 2008 amendments, the General Assembly "add[ed] protections for property owners and other interested parties, changing the purpose of the tax sale statute, once concerned only with facilitating foreclosure[.]"  Kona Props., LLC v. W.D.B. Corp., 224 Md. App. 517, 552, 121 A.3d 191, 211 (2015).  In short, the legislative history of the statutes confirms the plain language of TP § 14-843(a)(4)(i) and clearly evinces the General Assembly's intent that reimbursement of attorney's fees be discretionary rather than mandatory and that redemption of properties be encouraged.

### *The Circuit Court's Decision Not to Award Attorney's Fees under TP § 14-843(a)(4)(i)*

Having established the General Assembly's clear intent to make the reimbursement of attorney's fees and expenses discretionary rather than mandatory and to encourage redemption, we turn to the circumstances of this case and determine that it would be inconsistent with that intent to find an abuse of discretion in the circuit court's decision not

to authorize reimbursement of Thornton Mellon attorney's fees under TP § 14-843(a)(4)(i) after Thornton Mellon hampered Dennis's efforts to redeem the Property. As the Court of Special Appeals recognized, "a property owner cannot exercise the statutory right of redemption without some reasonable level of cooperation from the certificate holder[,]" especially in a jurisdiction where, as in Frederick County, a property owner needs a release from the tax sale certificate holder to redeem the property. Thornton Mellon, 250 Md. App. at 326, 250 A.3d at 309 (footnote omitted). In this case, Thornton Mellon not only failed to cooperate with Dennis's efforts to redeem the Property, but also hindered her ability to do so, even after she paid Thornton Mellon attorney's fees and expenses. Given the circumstances of the case, we are more than satisfied that the circuit court did not abuse its discretion in determining that it would be inequitable to award Thornton Mellon attorney's fees.

It is clear that for the right of redemption to be effective, a tax sale certificate holder must cooperate with a property owner's efforts to exercise the right. In jurisdictions like Frederick County in which a release is required, a certificate holder must not only provide a property owner accurate and timely information as to the fees and expenses due but must also supply the owner a valid release to facilitate the redemption process. In this case, there is a plethora of evidence supporting the circuit court's finding that Thornton Mellon made errors that impeded Dennis's ability to redeem the Property. On November 14, 2019, Dennis visited Thornton Mellon's website and obtained an invoice generated by Thornton Mellon that included attorney's fees and expenses for the filing of a complaint even though

- 42 -

Thornton Mellon had not yet filed a complaint to foreclose the right of redemption.[14]  This was a failure by Thornton Mellon to accurately inform Dennis of the fees and expenses due and constituted overcharging.  Dennis was forced to telephone Thornton Mellon to fix the problem and obtain a new invoice with the correct fees and expenses due.  After obtaining the corrected invoice, at approximately 2:00 p.m., Dennis paid the fees in full.

After receiving Dennis's payment, Thornton Mellon supplied Dennis with a release that was labeled "expired" and lacked an expiration date.[15]  Dennis needed a valid release to redeem the Property, and Thornton Mellon failed to provide her with one.  We are unpersuaded by Thornton Mellon's contention that the 2:12 p.m. email, which contained the link to the page on Thornton Mellon's website with the release, made clear that she could use the release to redeem the Property.  The 2:12 p.m. email did not mention the circumstance that the release would state that it was expired and that it would not contain an expiration date.

We are not persuaded by Thornton Mellon's counsel's contention at oral argument that it did not matter that the release was labeled "expired" because the release also stated: "If expired, please check with Attorney Polk."  Thornton Mellon argued that the release "didn't say: 'If expired, go put your head in the sand and do nothing.'"  In our view, the

---

[14]At the time, Thornton Mellon's automated system apparently generated invoices which included attorney's fees and expenses for the filing of a complaint as of the earliest date on which a complaint to foreclose the right of redemption could be timely filed, regardless of whether Thornton Mellon had actually filed such a complaint.

[15]At oral argument, when asked whether Thornton Mellon had fixed its system so that it would no longer generate releases saying that they were expired when that would be inaccurate, Thornton Mellon's counsel stated that he had informed Thornton Mellon of the issue and that he believed, but did not know for certain, that the system had been fixed.

language about checking with Polk did not change the circumstances that the release was labeled "expired," lacked a valid expiration date, and as such could not be used to redeem the Property without clarification.

Dennis was unaware of her alleged ability to use the expired release because she was not included on emails between Polk and Martin in which Martin indicated that the County would accept the release. The record shows that, at 3:25 p.m., Martin emailed Polk, and pointed out that the release was labeled "expired" but indicated that Frederick County would nonetheless accept the release. At 3:30 p.m., Polk emailed Martin, stating that she could allow redemption that day. Dennis was not included on the emails. Eventually, at 4:38 p.m., Polk advised Dennis that he had informed Martin that Dennis could redeem the Property that day. Polk's 4:38 p.m. email was of no help to Dennis because the Finance Department of Frederick County had already closed for business at 4:00 p.m. Further, in the absence of any communication on the matter from Thornton Mellon or Frederick County, Dennis had no reason to believe that an expired release would be valid.[16]

Also troubling, on November 15, 2019 at 8:48 a.m., Polk indicated in an email to Dennis that "[f]ees have been added[,]" that she would need to pay them to redeem the

---

[16]Dennis's uncontroverted testimony indicated that it was her understanding that the release needed an expiration date to be valid and that she could be charged additional fees if she used an expired release. According to Dennis, on November 12, 2019—*i.e.*, just two days before she received the release—during a telephone call to the Finance Department of Frederick County, she was told that the release necessary for redemption needed to include an expiration date and that a release without an expiration date would not be accepted. She was also directed to a page on the website of Frederick County that stated that the release necessary for redemption would include an expiration date.

Property, and that there was nothing else he could do. The circuit court found that, with this email, Thornton Mellon advised Dennis to pay fees and expenses for the filing of a complaint at 8:48 a.m. when the complaint was not filed until 10:06 a.m. This was the second time that Thornton Mellon failed to accurately inform Dennis of fees and expenses due. As the circuit court recognized, until Thornton Mellon filed the complaint, Dennis had the right to redeem the Property without paying attorney's fees under TP 14-843(a)(4)(i) for the filing of a complaint.[17]

Considered together, all of these circumstances amply support the circuit court's finding that Thornton Mellon impeded Dennis's efforts to redeem the Property. As such, the circuit court did not abuse its discretion in declining to order reimbursement of attorney's fees under TP § 14-843(a)(4)(i)2.

### *The So-Called Impeded Redemption Doctrine*

In this case, in an attempt to obtain reimbursement for attorney's fees under TP § 14-843(a)(4), Thornton Mellon asserts that the circuit court created, and the Court of Special Appeals upheld, a so-called "impeded redemption doctrine." This is a

---

[17]We are aware that Thornton Mellon contends that it was entitled to file a complaint in the case as early as November 14, 2019, and that it was not obligated to not do so because Dennis paid fees and expenses after receiving the corrected invoice. Although the circuit court made reference to the complaint being filed prematurely and raised whether Thornton Mellon could have held off on filing the complaint, the circuit court did not rule in the abstract that a tax sale purchaser must delay filing a complaint. Rather, the circuit court found that, given Thornton Mellon's errors in this case, the filing of the complaint was premature. Read in context, the circuit court found that Thornton Mellon's filing of the complaint was premature because Thornton Mellon had interfered with Dennis's right to redeem the Property. In posing Questions 3 and 4 in the petition for a writ of *certiorari*, Thornton Mellon overreads the circuit court's memorandum opinion.

misinterpretation of the opinions of both courts.  Neither court did any such thing.  The circuit court simply determined that it would be inequitable to award Thornton Mellon attorney's fees given that it interfered with Dennis's efforts to redeem the Property, and the Court of Special Appeals upheld that determination.  See Thornton Mellon, 250 Md. App. at 326-27, 250 A.3d at 309-10.  Far from creating a new doctrine, the circuit court and the Court of Special Appeals gave effect to the General Assembly's intent, demonstrated by the plain language and legislative history of the statutes governing tax sales, to provide due process to property owners in the redemption process.  It would defeat that intent to permit Thornton Mellon to interfere with a property owner's right of redemption and be reimbursed for attorney's fees after having done so.  No matter the label that is given to what Thornton Mellon did in this case—*i.e.*, impeding, hindering, or hampering redemption—it is the kind of conduct that the General Assembly intended to curb in amending the statutes governing tax sales in 2008.

We are unpersuaded by Thornton Mellon's argument that permitting a trial court to find that a property owner's right of redemption has been impeded would be superfluous because, under TP § 14-829(a), a property owner may request that a trial court fix the amount necessary for redemption.  By its plain language, TP § 14-829(a) applies only where a "property is redeemed after an action to foreclose the right of redemption is instituted[.]"  TP § 14-829(a) is of no help to a property owner where, as here, a tax sale certificate holder hinders a property owner's efforts to redeem a property before the tax sale certificate holder files a complaint.  In addition, TP § 14-829(a) applies to a determination of fees and expenses and not to an assessment of whether a certificate holder

has engaged in conduct that would make it difficult for a property owner to exercise the right of redemption.

We also are not persuaded by Thornton Mellon's contention that permitting a trial court to determine that redemption has been impeded would raise various unanswerable questions for tax sale certificate holders, such as whether they must refrain from filing a complaint to foreclose the right of redemption where a property owner pays fees to the tax sale certificate holder but does not fully redeem the property. The plain language of the tax sale statutes makes clear the actions that must be taken by both property owners and tax sale certificate holders in the redemption process. Put simply, it is inconsistent with the statutes for a tax sale certificate holder to fail to cooperate, or to interfere, with a property owner's efforts to redeem a property. We need not address all of the various hypotheticals that Thornton Mellon raises on brief concerning scenarios that could arise in the redemption process. It is sufficient to say that Thornton Mellon was required to provide Dennis with a reasonable opportunity to redeem the Property, and to not impede or hamper the process.

The concept that tax sale certificate holders must act reasonably in the redemption process existed in case law before the 2008 amendments to the tax sale statutes. In support of the contention that it was not required to give Dennis more time to redeem the Property before filing a complaint and a contention that a property owner should be required to prove impeded redemption by clear and convincing evidence, Thornton Mellon brings to our attention the case of Scheve v. McPherson, 44 Md. App. 398, 408 A.2d 1071 (1979). In Scheve, id. at 399, 402, 404-08, 408 A.2d at 1073-74, 1076-78, the Court of Special

Appeals held that a trial court erred as a matter of law in finding that there was constructive fraud on the part of the tax sale certificate holder and concluded that the certificate holder did not breach any duty owed to property owners who were attempting to redeem a property. The certificate holder had advised the property owners that, upon payment of costs and fees, he would join them in petitioning to redeem the property. See id. at 400, 408 A.2d at 1073. No specific deadline was set and, after approximately three weeks, the certificate holder sought a decree foreclosing the right of redemption. See id. at 407-08, 408 A.2d at 1077.

Against this backdrop, in Scheve, the Court of Special Appeals determined that the certificate holder did not breach a duty to the property owners and that the three-week period of time was long enough to wait. See id. at 408, 408 A.2d at 1077-78. The Court of Special Appeals stated: "At best, [the certificate holder's] obligation was to wait but a reasonable time." Id. at 408, 408 A.2d at 1077. The holding in Scheve, although it predates the 2008 amendments of the tax sale statutes, is consistent with the principle that a certificate holder must act reasonably and not interfere with the right of redemption. The holding in Scheve offers no support for either of Thornton Mellon's contentions. Indeed, the holding demonstrates that certificate holders must act reasonably in terms of their conduct during the redemption process.

Next, we decline to adopt Thornton Mellon's position that, if a trial court is permitted to determine that a property owner's ability to redeem a property has been impeded, we should require that the property owner prove by clear and convincing evidence that the owner had the funds necessary to redeem the property at the time that the

- 48 -

tax sale certificate holder filed the complaint. There is nothing in the tax sale statutes that requires a property owner to demonstrate or prove that the owner has funds to redeem a property in order to get the tax sale certificate holder to provide an accurate invoice for fees and expenses due, to not charge for filing a complaint that has not yet been filed, and to provide a valid release. With the 2008 amendments of the statutes, the General Assembly's intent was to ensure due process and create a balance between the right of property owners to redeem property and foreclosure of the right. It would frustrate the General Assembly's intent to require a property owner who alleges that the certificate holder impeded redemption to prove, by a preponderance of the evidence or clear and convincing evidence, that the owner had the funds necessary to redeem a property at the time that the certificate holder was not taking actions that it was required by statute to take. Indeed, it would be contrary to the General Assembly's intent and the plain language of the tax sale statutes to require that, before a trial court may deny reimbursement of attorney's fees in a case where a certificate holder impeded a property owner's ability to redeem, there must be an actual showing of funds by a property owner who may not have actually had money in hand but had the intent to redeem and the ability to obtain the necessary funds.

Moreover, the circumstances of this case demonstrate that Dennis intended to redeem the Property. Dennis testified that, on or about November 10 or 11, 2019, she sold her grandmother's wedding ring for at least $6,500.00 in cash. Dennis also testified that she was prepared to redeem the Property on November 14, 2019 and that she would have done so on that date or on the morning of November 15, 2019 if Thornton Mellon had

- 49 -

provided her with a release that had an expiration date and was not labeled expired. That Dennis had the ability to redeem the property is also supported by the circumstance, on November 14, 2019, she paid Thornton Mellon $801.20. The circuit court pointed out at the hearing that Dennis would not have done so had she not intended to promptly redeem the Property. On December 16, 2019, Dennis took cash to a bank and received a cashier's check in the amount of $6,265.63 payable to the "FREDERICK COUNTY TREASURER" and on March 6, 2020, she used the cashier's check to redeem the Property. In this case, the record demonstrates that Dennis had the intent and the ability to redeem the Property. That said, we decline to hold that a property owner who alleges that the owner's efforts to redeem a property have been interfered with must be able to demonstrate that the owner had the funds necessary to redeem the property at the time that the interference occurred.

### The Circuit Court's Decision Not to Award Attorney's Fees in Exceptional Circumstances under TP § 14-843(a)(4)(iii)

We have already concluded that the circuit court did not abuse its discretion in not ordering reimbursement to Thornton Mellon of attorney's fees under TP § 14-843(a)(4)(i). We now similarly conclude that the circuit court did not abuse its discretion in not ordering reimbursement to Thornton Mellon of attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii). Contrary to Thornton Mellon's contention, the circuit court addressed the issue of reimbursement for all attorney's fees. The circuit court determined, and the Court of Special Appeals concluded, that it would have been inequitable for Thornton Mellon to have been reimbursed for any attorney's fees in this case. See Thornton Mellon, 250 Md. App. at 332, 250 A.3d at 312. The circuit court determined

- 50 -

that, given Thornton Mellon's errors, *i.e.*, that Thornton Mellon had interfered with Dennis's ability to redeem the Property, "the filing of the [c]omplaint was premature, and all requests for attorney's fees flow from it."

As such, the circuit court concluded that it would be inequitable for Thornton Mellon to be reimbursed for any attorney's fees. In other words, although the circuit court did not assess Thornton Mellon's allegations about work performed during litigation, the circuit court concluded that it would be inequitable for Thornton Mellon to receive any reimbursement of attorney's fees. It was clear that the circuit court was aware of the three motions for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii) and denied the motions. The Court of Special Appeals affirmed, concluding that the circuit court's finding of inequity justified the court's decision to deny Thornton Mellon's motions for attorney's fees in exceptional circumstances under TP § 14-843(a)(4)(iii). See id. at 332, 250 A.3d at 312. Like with TP § 14-843(a)(4)(i), the language of TP § 14-843(a)(4) makes clear that, for TP § 14-843(a)(4)(iii), a decision as to reimbursement for attorney's fees in exceptional circumstances is discretionary, *i.e.*, "may be reimbursed[.]" The circuit court found that it would be inequitable to reimburse for all attorney's fees and given Thornton Mellon's actions in the case, we, like the Court of Special Appeals, conclude that this determination was not an abuse of discretion.[18]

**JUDGMENT OF THE COURT OF SPECIAL**

---

[18]Although Dennis contends that reimbursement of attorney's fees under TP § 14-843(a)(4)(iii) is limited only to actions taken by an attorney before a complaint is filed, rather than an attorney's actions during litigation of a complaint, we need not address the issue as we affirm the decision to not order reimbursement of attorney's fees under TP § 14-843(a)(4)(iii).

**APPEALS AFFIRMED. PETITIONER TO PAY COSTS.**